**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Pamela E. Prescott, Esq. (SBN: 328243)
pamela@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Garo Daldalian

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GARO DALDALIAN,** **Individually and On Behalf of All Others Similarly Situated,** <br><br> **Plaintiff,** <br><br> v. <br><br> **PEPSICO, INC., CONOPCO, INC. d/b/a UNILEVER, and PEPSI LIPTON PARTNERSHIP d/b/a PURE LEAF TEA,** <br><br> **Defendants.** | Case No.: <br><br> <u>**CLASS ACTION SEEKING STATEWIDE RELIEF**</u> <br><br> **COMPLAINT FOR VIOLATIONS OF:** <br><br> 1) **CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CLRA"), CAL. CIV. CODE §§ 1750,** *ET SEQ.***;** <br> 2) **CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"), CAL. BUS. & PROF. CODE §§ 17200,** *ET SEQ.***;** <br> 3) **VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL"), CAL. BUS. & PROF. CODE §§ 17500,** *ET SEQ.***;** <br> 4) **BREACH OF EXPRESS WARRANTY;** <br> 5) **UNJUST ENRICHMENT;** <br> 6) **NEGLIGENT MISREPRESENTATION; AND,** <br> 7) **INTENTIONAL MISREPRESENTATION.** <br><br> **JURY TRIAL DEMANDED** |

**INTRODUCTION**

1.      Plaintiff Garo Daldalian ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of defendants Pepsico, Inc. ("Pepsi" or "Defendant Pepsi"), Conopco, Inc. d/b/a Unilever ("Unilever" of "Defendant Unilever"), and Pepsi Lipton Tea Partnership d/b/a Pure Leaf Tea ("Pure Leaf" or "Defendant Pure Leaf") (collectively "Defendants") concerning unlawful labeling of Defendants' ready to drink beverages, with the designation and representation that the products are/were made and/or manufactured in the United States without clear and adequate qualification of the foreign ingredients and components contained therein, as required by federal rules and California laws.

2.      The unlawfully represented products are sold via third party merchants online (including through Amazon, Walmart, Instacart and others) and in brick-and-mortar stores.

3.      Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by his attorneys.

4.      As stated by the California Supreme Court in *Kwikset v. Superior Court* (January 27, 2011) 51 Cal.4th 310, 328-29:

> **Simply stated: labels matter.** The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities that may come to associate with a particular source. . . .In particular . . . **the 'Made in U.S.A.' label matters**. A range of motivations may fuel this preference, from desire to support domestic jobs or labor conditions, to simply patriotism. The Legislature has recognized the materiality of this representation by specifically outlawing deceptive      and      fraudulent      'Made      in      America'

representations. (Cal. Bus & Prof. Code section 17533.7; see also Cal. Civ. Code § 1770, subd. (a)(4) (prohibiting deceptive representations. Of geographic origin)). The objective of section 17533.7 'is to protect consumers from being misled when they purchase products in the belief that they are advancing the interest of the United States and the industries and workers. . .' (emphasis added).

5.    Pure Leaf's products are labeled with the representation that the products are "Brewed in USA" (an express U.S. origin representation), which is printed on each and every product manufactured, sold or distributed by Defendants, including the product purchased by Plaintiff.

6.    Contrary to Defendants' express representations and their failure to clearly and adequately qualify those representations, the product purchased by Plaintiff is substantially and materially composed of indispensable foreign ingredients.

7.    Plaintiff purchased a six-pack of Pure Leaf's Lemon Real Brewed Tea (the "Product"), which is labeled, marketed and sold to consumers as "Brewed in USA", as further discussed herein.

8.    However, the Product is made with tea, among other ingredients and components, that is not grown, sourced or otherwise made in the United States.

9.    Defendants' conduct of advertising and selling deceptively labeled products bearing the representation that such products are "Brewed in USA" violates: (1) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (2) California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*; (3) California's False Advertising Law ("FAL"), Bus. & Prof. Code § 17500, *et seq.*; and constitutes (4) breach of express warranty; (5) unjust enrichment; (6) negligent misrepresentation; and (7) intentional misrepresentation.

10.    Such conduct also amounts to a violation of 16 C.F.R. § 323 (Federal Trade Commission 2021) (the "MUSA Rule").

11.    This conduct caused Plaintiff, and other similarly situated, damages, and requires restitution and injunctive relief to remedy and prevent future harm.

12.    In addition to the unqualified "Brewed in USA" representation that appears on the Product, Pure Leaf's other substantially similar varieties of its ready to drink tea products–including but not limited to, Subtly Sweet Tea, Subtly Sweet Peach Tea, Subtly Sweet Lemon Tea, Sweet Tea, Lemon Tea, Raspberry Tea, Extra Sweet Tea, Unsweetened Tea, Unsweetened Tea with Lemon, Unsweetened Green Tea, Green Tea, Honey Green Tea, and Tea & Lemonade, as well as any and all other Pure Leaf products, regardless of brand or size, that claim "Brewed in USA" or any derivative thereof (together with the Product, the "Class Products")–contain this same unqualified "Brewed in USA" representation.

### JURISDICTION AND VENUE

13.    This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), because: (1) there is minimal diversity, including because: (a) Plaintiff is a citizen of the State of California, (b) Defendant Pepsi is a North Carolina corporation with its headquarters and principal place of business in New York, (c) Defendant Unilever is a New York corporation with its headquarters and principal place of business in New Jersey, and (d) Defendant Pure Leaf is a joint venture between Pepsi and Unilever with its headquarters and principal place of business in New York; (2) the amount in controversy in this matter exceeds $5,000,000, exclusive of interest and costs; and (3) there are more than one hundred (100) people in the putative class.

14.    Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in the County of Los Angeles, State of California, which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and (iii) Defendants conduct business within this judicial district at all times relevant.

//

//

**PARTIES**

15.    Plaintiff is, and at all times mentioned herein was, a natural person, an individual citizen and resident of the County of Los Angeles, State of California, and within this judicial district.

16.    Upon information and belief, Defendant Pepsi is a corporation that is organized and exists under the laws of the State of North Carolina, with a principal place of business within the State of New York located at 700 Anderson Hill Road, Purchase, New York 10577.

17.    Upon information and belief, Defendant Unilever is a corporation that is organized and exists under the laws of the State of New York, with a principal place of business within the State of New Jersey located at 700 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

18.    Upon information and belief, Defendant Pure Leaf is a joint venture between Pepsi and Unilever with a principal place of business within the State of New York located at 700 Anderson Hill Road, Purchase, New York 10577.

19.    Plaintiff alleges that at all times relevant herein Defendants conduct business within the State of California, in the County of Los Angeles, and within this judicial district.

20.    Upon information and belief, Defendant Pepsi is one of the largest and oldest beverage companies in the Unites States (if not the world), and owns, produces, manufactures, and sells products under numerous brands throughout the United States and globally, including the Class Products through a joint venture with Unilever under the label "Pure Leaf."

21.    Upon information and belief, Defendant Unilever is one of the largest and oldest food companies, and owns, produces, manufactures, and sells products under numerous brands throughout the United States and globally, including the Class Products through a joint venture with Pepsi under the label "Pure Leaf."

22.    Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendant, respectively.

### NATURE OF THE CASE

23.    Defendant Pepsi and Defendant Unilever are two of the largest consumer goods companies in the world. Together, their combined annual revenues—Pepsi with approximately $86 billion in 2022 and Unilever with around $60 billion—exceed the gross domestic product of over 60% of the world's countries.

24.    Defendant Pepsi owns a vast portfolio of brands across several categories, including beverages, snacks, and other food products.

25.    Some of their most well-known brands include Pepsi, Mountain Dew, Gatorade, Tropicana, Aquafina, 7UP, Sierra Mist (rebranded as Starry in 2023), Brisk Iced Tea, SoBe, Schweppes (in select international markets), Lay's, Doritos, Cheetos, and Fritos, to name just a few.

26.    Unilever owns a wide range of well-known brands in the U.S. across various categories, including food, beverages, personal care, and home care. Some of Unilever's most recognizable U.S. brands include Hellmann's, Breyers, Dove, Lipton, Ben & Jerry's, Suave, TRESemmé, Axe, Seventh Generation, and Knorr.

27.    Given their vast resources and operational sophistication, it's difficult to understand why Defendants so clearly violate the well-established laws, rules, and regulations surrounding the use of "Made in USA" or any derivative, such as "Brewed in USA," other than for their own financial gain at the expense of consumers.

28.    At all times relevant, Defendants made and continue to make material misrepresentations regarding the Class Products.

29.    Specifically, Defendants advertise, market, promote, and sell the Class Products as "Brewed in USA" (without disclosing the use of foreign ingredients),

when in fact this claim is false.

30.     Although Defendants represented that the Class Products were "Brewed in USA" without qualification, the products are wholly or substantially made with ingredients and components sourced, grown, or manufactured outside the United States.

31.     Each consumer, including Plaintiff, was exposed to the same material misrepresentations, as similar labels were placed on all Class Products sold—and currently sold—throughout the United States, including in California.

32.     Federal rules and regulations regarding the use of "Made in the United States" claims— including any synonymous claims, whether express or implied— are well-established and clearly defined with respect to products and services.

33.     Specifically, the MUSA Rule clearly defines the meaning of "Made in the United States", including synonymous phrases,[1] as well as when it can be used without clear and adequate qualification notifying consumers that the good or service in question contains or is made with ingredients or components that are not made or sourced in the United States.[2]

34.     As a consequence of Defendants' unfair and deceptive practices, Plaintiff and other similarly situated consumers purchased the Class Products under the false impression and in reliance upon Defendants' representations that the Class Products were actually made in the United States with ingredients and components sourced

---

[1] *See* 16 C.F.R. § 323.1(a) ("The term *Made in the United States* means **any unqualified representation,** ***express or implied***, that a product or service, or a specified component thereof, is of U.S. origin, including, but not limited to, a representation that such product or service is "made," "manufactured," "built," "produced," "created," or "crafted" in the United States or in America, ***or any other unqualified U.S.-origin claim***.") (emphasis added).

[2] *See* 16 C.F.R. § 323.2 Prohibited Acts ("In connection with promoting or offering for sale any good or service, in or affecting commerce as "commerce" is defined in section 4 of the Federal Trade Commission Act, 15 U.S.C. 44, ***it is an unfair or deceptive act or practice*** within the meaning of section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. 45(a)(1), ***to label any product as Made in the United States unless*** the final assembly or processing of the product occurs in the United States, all significant processing that goes into the product occurs in the United States, and ***all or virtually all ingredients or components of the product are made and sourced in the United States***. (emphasis added).

from within the United States.

35.    As a result, Plaintiff and other similarly situated consumers overpaid for the Class Products, purchased the Class Products over the products of competitors, and/or purchased the Class Products under the belief that the product they purchased was made in the United States and did not contain key ingredients (such as, for instance, tea) from outside the United States.

36.    Despite the clearly established and well-defined federal rules regarding "Made in the United States" claims, Defendants falsely, unfairly and deceptively advertised, marketed and sold the Class Products, including the Product purchased by Plaintiff, as "Brewed in USA" without clear and adequate qualification informing consumers of the presence of foreign ingredients and/or components as further discussed herein.

37.    Had Plaintiff and other consumers similarly situated been made aware that the Class Products contained a substantial amount of ingredients sourced from outside of the United States, they would not have purchased the Class Products.

38.    As a result of Defendants' false, unfair, and deceptive statements and/or their failure to disclose the true nature of the Class Products, along with the other conduct described herein, Plaintiff and similarly situated consumers purchased hundreds of thousands of units of the Class Products in California, suffering, and continuing to suffer, harm, including the loss of money and/or property.

39.    Defendants' conduct, as alleged herein, violates several California laws, as detailed below.

40.    This action seeks, among other things, equitable and injunctive relief; public injunctive relief; restitution of all amounts unlawfully retained by Defendant; and disgorgement of all ill-gotten profits resulting from Defendants' alleged wrongdoing.

41.    Unless enjoined, Defendants' unfair, deceptive and unlawful conduct will continue into the future, and Plaintiff and class members will continue to suffer

harm.

**FACTUAL ALLEGATIONS**

42.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully stated herein.

43.    Defendants produce, market, and advertise various Class Products, including the Product purchased by Plaintiff, as "Brewed in USA," without clear or adequate qualification.

44.    The Federal Trade Commission ("FTC") has made it clear that U.S. origin claims will be analyzed "in context," considering factors such as "terms used," "prominence," and "proximity to images."[3] Even if "Brewed in USA" lacked any additional context, it would still violate the MUSA Rule. However, in the case of the Class Products, the claim is accompanied by highly impactful and deliberate additional context, clearly designed to convey, albeit unfairly and deceptively–an American origin.

45.    Directly above the capitalized text stating "BREWED IN USA," Defendants include a prominent, large image of a liquid drop (presumably tea) featuring the unmistakable stars and stripes of the U.S. flag filling the entire drop, further reinforcing Defendants' intent to convey that the Class Products and their ingredients are of U.S. origin.

46.    Each of these representations, on its own, is sufficient to be considered a claim of American origin. However, taken together, they form an indisputable, unqualified express claim of American origin—one that is false, unfair, and

---

[3] *See* United States, Federal Trade Commission. "Made in USA Labeling Rule." 86 Fed. Reg. 37022, July 14, 2021. ("The *list of equivalents to "Made in USA" set forth in Section 323.1 is not exhaustive because the means of communicating U.S. origin are too numerous to list*. The Commission believes the *non-exhaustive list of examples given provide sufficient guidance on the scope of covered express and implied claims*. These examples are based on the Commission's decades of enforcement experience addressing MUSA claims. For other claims, the Commission *will analyze them in context*, including the *terms used*, their *prominence*, and their *proximity to images* and other text." at p. 37028) (emphasis added).

deceptive, given that the Class Products are substantially made with foreign ingredients.

47.    Below is an example of the aforementioned representation that appears on the packaging and bottles of the Class Products:



48.    These representations are prominently displayed on the packaging of each Class Product.

49.    Additionally, the text size of "Brewed in USA" and the prominence of the stars and stripes iconography are in large bold font and prominently displayed, clearly indicating Defendants' intent to convey a false and unqualified claim of U.S. origin for the Class Products.

50.    Not only is the intent of the MUSA Rule's illustrative list of verbs clear on its face, but the non-exhaustive nature of the list is further supported by the FTC's commentary, which confirms its purpose: to capture verbs that are synonymous with "made" in a non-exhaustive manner.

51.    It is clear that the term "brewed" need not be specifically enumerated in the MUSA Rule for Defendants' unqualified use of "Brewed in USA" on tea products, along with other unqualified U.S. origin representations, to violate the MUSA Rule.

52.    In the context of tea production, "brewed" is commonly used interchangeably with "made."

53.    This is evident not only in the synonymous relationship between "brew" and

"make,"[4] but also in the everyday language surrounding tea.

54.    For example, when someone says, "I'll brew some tea," it is understood to refer to the entire process of preparing and serving tea, not just the single act of steeping the leaves in hot water.

55.    Similarly, saying "I'll make some tea" conveys the same meaning as "I'll brew some tea." This demonstrates the broader understanding of "brewed" in tea production, encompassing the entire process from start to finish, not merely one part of it.

56.    As a result of the unqualified U.S. origin claims on the Class Products' packaging, consumers have been misled for years, leading to both initial and repeat purchases of products they believed were made in the United States with ingredients and components sourced from the U.S.

57.    Despite the clear and unqualified claim that the Class Products were "Brewed in the USA," they are substantially made with foreign ingredients–a fact that is not properly disclosed on the label, as required by the MUSA Rule and California law.

58.    Specifically, Class Products are made with tea, their primary substantive ingredient, which Defendants conceded on their website is sourced from either India, Kenya, Indonesia or Sri Lanka.[5]

59.    Some varieties of Class Products, including Pure Leaf's Honey Green Tea, Green Tea and Unsweetened Green Tea, contain ascorbic acid (also known as vitamin C), which is also an imported ingredient.

60.    When featured in certain Class Products, Vitamin C is prominently highlighted in the marketing, advertising, and labeling of the Defendants' products, emphasizing the significance of this additional foreign ingredient, as shown in the

---

[4] *See* https://www.collinsdictionary.com/dictionary/english-thesaurus/brew (listing synonyms for "brew" include "make").

[5] *See* https://www.pureleaf.com/tea-101/ ("We use the highest quality, ethically sourced tea leaves from Rainforest Alliance Certified tea estates in **India, Kenya, Indonesia and Sri Lanka** to give you an authentic tea experience, from first sip to last.") (last visited Feb. 12, 2025) (emphasis added).

image below:

PURE LEAF

# HONEY GREEN TEA

Enjoy our refreshingly crisp real brewed Green Tea, 100% refreshing and full of 100% antioxidant Vitamin C.

Available In:

MULTIPACK



PURE LEAF

# GREEN TEA

Enjoy our refreshingly crisp real brewed Green Tea, 100% refreshing and full of 100% antioxidant Vitamin C.

Available In:

MULTIPACK



PURE LEAF

# UNSWEETENED GREEN TEA

Enjoy our refreshingly crisp real brewed Green Tea, 100% refreshing and full of 100% antioxidant Vitamin C.

Available In:

18.5 OZ



61.    By failing to disclose the use of foreign ingredients and components, Defendants have unfairly and deceptively misrepresented the Class Products as being of purely of U.S. origin.

62.    The Defendants possess superior knowledge of the true facts, which were not disclosed, thereby tolling the applicable statute of limitations.

63.    Most consumers have limited awareness that products—along with their ingredients and components—labeled as made in the United States may, in fact, contain ingredients or components sourced, grown, or manufactured in foreign countries. This is a material factor in many purchasing decisions, as consumers believe they are buying superior goods while supporting American companies and jobs.

64.    American consumers generally perceive products, ingredients, and components of U.S. origin as being of higher quality than their foreign counterparts.

65.    On information and belief, Defendants either charged a premium for the Class Products compared to its competitors or gained a competitive advantage by having the Class Products chosen over others based on false, unqualified "Brewed in USA" and U.S. flag iconography representations.

66.    Federal rules and California laws are designed to protect consumers from such false representations and predatory conduct.

### FACTS SPECIFIC TO PLAINTIFF GARO DALDALIAN

67.    On or about January 22, 2024, Plaintiff visited a Stater Bros. grocery store located at 1390 North Allen Avenue, Pasadena, California 91104 seeking to purchase a beverage product.

68.    While viewing the various beverages, Plaintiff observed the Product displayed for sale, bearing a representation on both the bottles and outer packaging that the Product was made (specifically, brewed) in the USA, with the unmistakable and prominent iconography of the U.S. flag placed immediately above the "Brewed in USA" claim."

69.    The Product is made with foreign tea, which is its primary ingredient and the main reason consumers purchase the Class Products. Despite this, the Product makes unqualified U.S. origin claims, as described herein.

70.    Upon information and belief, tea is not the only foreign ingredient or component used in the production of the Class Products.

71.    Relying on the unqualified U.S. origin representations on the Product, as any reasonable consumer would, and seeking to purchase a product made in the United States with U.S. ingredients—especially since it is a beverage for ingestion— Plaintiff purchased a six-pack of the Product for approximately $8.99 (excluding tax and bottle deposit) from State Bros. grocery store for personal use.

72.    Plaintiff's reliance on Defendants' unqualified U.S. origin representations was reasonable, as consumers are accustomed to seeing disclosures like "Made in USA with globally sourced ingredients" or similar qualified variations on product packaging—if and when such U.S. origin claims are made. When consumers encounter an unqualified "Made in USA" or similar claim, they reasonably assume the product contains no foreign-sourced ingredients or components.

73.    Defendants' representations regarding the Class Products were unfair, deceptive, and misleading, as the Class Products were actually made with and/or contained ingredients or components sourced, grown, or manufactured outside the United States.

74.    Accordingly, Defendants are not entitled to lawfully make unqualified representations that the Class Products were "Brewed in USA," accompanied by the iconography of the U.S. flag.

75.    Such unqualified representations that the Product was made in the USA were material to Plaintiff's decision to purchase the Product.

76.    Indeed, in deciding to purchase the Product, Plaintiff relied on the labeling, marketing, and/or advertising prepared and approved by Defendants and their agents, as disseminated through the Class Products' packaging and labels

containing the misrepresentations alleged herein.

77.    Had Plaintiff known that the Class Products and their ingredients were not actually of U.S. origin, he would not have purchased the Product.

78.    In other words, Plaintiff would not have purchased the Product but for the "Brewed in USA" claim and accompanying U.S. flag representations on the Product and Class Products.

79.    As a result, Plaintiff was harmed because Defendants took Plaintiff's money due to their false, unqualified, unfair, and deceptive U.S. origin representations on the Product and Class Products.

80.    Each time Plaintiff and putative Class members purchased a Class Product, they relied on Defendants' unqualified U.S. origin representations in their purchasing decisions, as is typical of most U.S. consumers.

81.    Consequently, Plaintiff and other similarly situated consumers were deceived by Defendants' actions.

82.    Plaintiff believed, at the time of purchase, that the Product was of superior quality and that he was supporting U.S. jobs, the U.S. economy, and ethical working conditions by purchasing a product made with U.S.-sourced ingredients, rather than ingredients sourced, grown, or made outside the United States.

83.    Ingredients and components grown or manufactured in the USA are subject to strict regulatory requirements, including, but not limited to, agricultural, environmental, labor, safety, ethical, and quality standards.

84.    Foreign sourced, grown, or manufactured ingredients and components are not subject to the same U.S. standards and may pose greater risks to consumers, the environment, and the U.S. economy. This concern is especially significant for products intended for human consumption.

85.    Additionally, foreign-sourced, grown, or manufactured ingredients and components are generally of lower quality and less reliable than their U.S. origin counterparts.

86.    The false, unqualified, unfair and deceptive representation that these products are of U.S. origin reduces overall customer satisfaction compared to if they were genuinely crafted and bottled in the U.S. using ingredients and components sourced, grown, or made domestically.

87.    Upon information and belief, the Class Products, including the Product purchased by Plaintiff, contain foreign ingredients and are not worth the purchase price paid by Plaintiff and putative Class members.

88.    The precise amount of damages will be proven at the time of trial.

89.    Plaintiff and Class members were harmed as a result of Defendants' false, unqualified, unfair and deceptive U.S. origin representations alleged herein.

90.    This false, unfair, and deceptive advertising of the Class Products by Defendants presents an ongoing threat to consumers, as Defendants' conduct continues to this day.

**CLASS ALLEGATIONS**

91.    Plaintiff brings this action on behalf of Plaintiff and all others similarly situated.

92.    Plaintiff is a member of and seeks to represent a Class, pursuant to Federal Rules of Civil Procedure, Rule 23(a), 23(b)(2) and 23(b)(3), defined as:

> All persons in California who purchased one or more of the Class Products labeled "Brewed in USA" on the product or packaging, and that were made with or contained ingredients or components not grown or manufactured in the USA, within four years prior to the filing of this Complaint.

93.    Excluded from the Class are Defendants' officers, directors, and employees; any entity in which Defendants have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants. Further

excluded from the Class are members of the judiciary to whom this case is assigned, their families, and members of their staff.

94.    Plaintiff reserves the right to modify the proposed Class definition, including but not limited to expanding the Class to protect additional individuals and to assert additional sub-classes as warranted by additional investigation.

95.    <u>Numerosity</u>: The members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of members of the Class is unknown to Plaintiff at this time, based on information and belief, the Class consists of thousands of individuals within California.

96.    <u>Commonality</u>: There are questions of law and fact common to the Class, which predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, without limitation:

- The nature, scope, and operations of the wrongful practices of Defendants;

- Whether Class Products are or have been represented as being of U.S. origin without clear and adequate qualification;

- Whether Defendants negligently or intentionally misrepresented or omitted the fact that the Class Products, including the Product purchased by the Plaintiff and other Class members, were sold illegally in California;

- Whether Defendants knew or should have known that its business practices were unfair and/or unlawful;

- Whether the conduct of Defendants violated the CLRA;

- Whether the conduct of Defendants violated the FAL;

- Whether the conduct of Defendants was "unlawful" as that term is defined in the UCL;

- Whether the conduct of Defendants was "unfair" as that term is defined in the UCL;

- Whether Defendants was unjustly enriched by their unlawful and unfair business practices;

- Whether Plaintiff and members of the Class suffered monetary damages as a result of Defendants' conduct and, if so, the appropriate amount of damages; and

- Whether Plaintiff and members of the Class are entitled to injunctive relief, including public injunctive relief.

97.    <u>Typicality</u>: Plaintiff's claims are typical of those of the Class. Plaintiff and all members of the Class have been injured by the same wrongful practices of Defendants. Plaintiff's claims arise from the same course of conduct that gave rise to the claims of the Class and are based on the same legal theories in that Plaintiff purchased one or more Class Products from Defendants that was represented and/or advertised as being "Brewed in USA" along with other unqualified U.S. origin representations.

98.    <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of members of the Class. Plaintiff's Counsel are competent and experienced in litigating consumer class actions. Plaintiff has retained counsel experienced in consumer protection law, including complex class action litigation involving unfair business practices. Plaintiff has no adverse or antagonistic interests to those of the Class and will fairly and adequately protect the interests of the Class. Plaintiff's attorneys are aware of no interests adverse or antagonistic to those of Plaintiff and the proposed Class.

99.    <u>Predominance</u>: Defendants have engaged in a common course of conduct toward Plaintiff and members of the Class, in that Plaintiff and members of the Class were induced to purchase the Class Products. The common issues arising from Defendants' conduct affecting members of the Class set out above predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

100.   <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most members of the Class would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

101.   Unless the Class is certified, Defendants will retain monies received as a result of Defendants' unlawful and deceptive conduct alleged herein. Unless a class-wide injunction is issued, Defendants will also likely continue to advertise, market, label, promote and package the Class Products in an unlawful, unfair, deceptive and misleading manner, and members of the Class will continue to be misled, harmed, and denied their rights under California law.

102.   Defendants have acted on grounds that apply generally to the Class, so that Class certification is appropriate.

**CAUSES OF ACTION**

**<u>FIRST CAUSE OF ACTION</u>**
**VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT ("CLRA")**
**(Cal. Civ. Code § 1750, *et seq*.)**

103.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further alleges as follows:

104.   California Civil Code Section 1750, *et seq.,* entitled the Consumers Legal Remedies Act ("CLRA"), provides a list of "unfair or deceptive" practices in a "transaction" relating to the sale of "goods" or "services" to a "consumer."

105.   The Legislature's intent in promulgating the CLRA is expressed in Civil Code Section 1760, which provides, *inter alia,* that its terms are to be:

> Construed liberally and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protections.

106.   Defendants' actions, representations, and conduct have violated, and continue to violate the CLRA because they extend to transactions that intended to result, or which have resulted in the sale of goods to consumers.

107.   Plaintiff and the Class Members are not sophisticated experts with independent knowledge of ingredient sourcing, product labeling and marketing practices.

108.   Plaintiff and the Class Members are California consumers who purchased Class Products for personal, family or household purposes.

109.   Each Defendant is a "person" as defined by Cal. Civ. Code § 1761(c).

110.   The Class Products that Plaintiff and other Class Members purchased from Defendants constitute "goods" as defined pursuant to Civil Code Section 1761(a).

111.   Plaintiff, and the Class members, are each a "consumer" as defined pursuant to Civil Code Section 1761(d).

112.   Each of Plaintiff's and the Class members' purchases of Defendants' products constituted a "transaction" as defined pursuant to Civil Code Section 1761(e).

113.    Civil Code Section 1770(a)(2), (4), (5), (7) and (9) of the CLRA provides that:

> The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:
> (2) [m]isrepresenting the source, sponsorship, approval, or certification of goods or services;

(4) [u]sing deceptive representations or designations of geographic origin in connection with goods or services;

(5) [r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have;

(7) [r]epresenting that goods or services are of a particular standard, quality, or grade…; [and]

(9) [a]dvertising goods or services with intent not to sell them as advertised.

114.    Defendants failed to comply with Civil Code Section 1770(a)(2), (4), (5), (7) and (9) by marketing and representing that its Class Products are "Brewed in USA," without qualification, when in fact they actually contain foreign sourced, grown or made ingredients and/or components.

115.    Plaintiff further alleges that Defendants committed these acts knowing the harm that would result to Plaintiff and Defendants engaged in such unfair and deceptive conduct notwithstanding such knowledge.

116.    Defendants knew or should have known that their representations about the Class Products as described herein violated federal rules and state laws, including consumer protection laws, and that these statements would be relied upon by Plaintiff and Class members.

117.    As a direct and proximate result of Defendants' violations of Cal. Civ. Code §§ 1750, *et seq*., Plaintiff and each Class member have suffered harm by paying money to Defendants for the Class Products, which they would not have purchased had they known the products were illegally, unfairly, and deceptively labeled and contained foreign ingredients.

118.    Plaintiff and the Class suffered monetary harm caused by Defendants because (a) they would not have purchased the Class Products on the same terms absent Defendants' illegal, unfair and deceptive conduct as set forth herein; (b) they paid a price premium for the Class Products or chose them over competing products

due to Defendants' misrepresentations and deceptive packaging, which falsely claimed the products were "Brewed in USA," without qualification; and (c) the Class Products contained foreign ingredients that were not properly disclosed.

119.    Plaintiff was therefore harmed because Plaintiff's money was taken by Defendants as a result of Defendants' false "Brewed in USA" and other U.S. origin representations set forth on the labels of the Class Products.

120.    Plaintiff and Class members reasonably relied upon Defendants' representations regarding the Class Products, and Plaintiff and the Class reasonably expected that the Class Products would not be illegally labeled in a unfair, deceptive and misleading manner.

121.    Thus, Plaintiff and the Class reasonably relied to their detriment on Defendants' misleading representations.

122.    Pursuant to California Civil Code § 1782(a), on or about February 21, 2024, Plaintiff sent Defendants a notice and demand for corrective action (the "CLRA Demand") via certified mail, informing Defendants of their violations of the CLRA and demanding that they cease and desist from such violations, as well as make full restitution by refunding all monies received in connection therewith.

123.    As the alleged violations were not cured by Defendants within 30 days of the CLRA Demand, Plaintiff, on behalf of himself and the Class, seeks damages and attorneys' fees pursuant to California Civil Code § 1782(d).

124.    As a direct and proximate result of Defendants' violations of the CLRA, Plaintiff and members of the Class are entitled to a declaration that Defendants violated the Consumer Legal Remedies Act.

125.    Under Cal. Civ. Code § 1780(a) and (b), Plaintiff and the putative Class are entitled to, and hereby seek, injunctive relief to prohibit such conduct in the future, as well as damages.

126.    Attached hereto as **Exhibit A** is a sworn declaration from Plaintiff pursuant to Cal. Civ. Code § 1780(d).

**SECOND CAUSE OF ACTION**
**VIOLATIONS CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")**
**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

127.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further alleges as follows:

128.   Plaintiff brings this claim individually and on behalf of the Class for Defendants' violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.

129.   Plaintiff and each Defendant are each "person[s]" as defined by California Business & Professions Code § 17201.

130.   California Business & Professions Code § 17204 authorizes a private right of action on both an individual and representative basis.

131.   "Unfair competition" is defined by Business and Professions Code Section § 17200 as encompassing several types of business "wrongs," four of which are at issue here: (1) an "unlawful" business act or practice, (2) an "unfair" business act or practice, (3) a "fraudulent" business act or practice, and (4) "unfair, deceptive, untrue or misleading advertising."

132.   The definitions in § 17200 are drafted in the disjunctive, meaning that each of these "wrongs" operates independently from the others.

133.   Through the conduct alleged in detail above and herein, Defendants engaged in unlawful, unfair, deceptive and/or fraudulent business practices in violation of Bus. & Prof. Code § 17200, *et seq*.

## A. *"Unlawful" Prong*

134.   Beginning at a date currently unknown through the time of this Complaint, Defendants have committed acts of unfair competition, including those described above, by engaging in a pattern of "unlawful" business practices, within the meaning of Bus. & Prof. Code § 17200 *et seq.*

KAZEROUNI
LAW GROUP, APC

135.   Defendants are alleged to have violated California law because the Class Products are advertised and labeled as "Brewed in USA," along with other unqualified U.S. origin representations, when in fact they contain foreign ingredients.

136.   Specifically, by manufacturing, distributing, and/or marketing the Class Products with false, unfair and deceptive unqualified U.S. origin claims, Defendants are in violation of: the CLRA, FAL, California's Made in the USA Statute, Bus. & Prof. Code §§ 17533.7; and/or the federal Made in USA Labeling Rule, 16 C.F.R. Part 323.

137.   Defendants falsely represent that Class Products are "Brewed in USA", among other U.S. origin claims, without clear and adequate qualification, despite the fact that they contain foreign sourced, grown or manufactured ingredients and/or components.

138.   Defendants have other reasonably available alternatives to further their business interests, aside from the unlawful conduct described herein, such as truthfully labeling the Class Products with clear and adequate qualifications of the foreign ingredients and components used therein.

139.   Instead, Defendants deliberately and deceptively misled consumers through unlawful and unfair practices for their own economic gain.

140.   Plaintiff and Class members reserve the right to allege additional violations of law that constitute unlawful business practices or acts, as such conduct is ongoing and continues to this day.

**B. *"Unfair" Prong***

141.   Beginning on a date currently unknown and continuing through the time of this Complaint, Defendants have engaged in acts of unfair competition prohibited by Bus. & Prof. Code § 17200, *et seq.*

142.   The Defendants engaged in a pattern of unfair business practices that violate both the letter and intent of the rules, regulations, and laws governing "Made in USA" claims. Specifically, they employed conduct and practices that either threaten or directly violate these laws by manufacturing, distributing, and/or marketing the Class Products with unqualified, unfair, and deceptive U.S. origin claims. These actions constitute violations of the CLRA, FAL and both federal and state "Made in USA" statutes.

143.   Additionally, Defendants engaged in a pattern of unfair business practices that violate the wording and intent of the aforementioned statutes. These practices, which are immoral, unethical, and unscrupulous, have caused harm to consumers and run counter to public policy. The utility of such conduct, if any, is far outweighed by the damage it causes, particularly through the manufacturing, distribution, and/or marketing of the Class Products with unqualified, unfair, and deceptive "Made in USA" claims.

144.   Defendants also engaged in a pattern of unfair business practices that violate the wording and intent of the aforementioned statutes. This conduct includes, but is not limited to, manufacturing, distributing, marketing, and/or advertising the Class Products with unqualified, unfair, and deceptive U.S. origin claims. As a result: (1) the injury to consumers was substantial; (2) the injury was not outweighed by any countervailing benefits to consumers or competition; and (3) the injury was one that consumers could not have reasonably avoided.

145.   Without limitation, Defendants' knowing mislabeling of the Class Products constitutes an unfair and deceptive business practice, misleading consumers into believing they are purchasing products made in the United States without foreign ingredients. As a result, Plaintiff could not have reasonably avoided the injury caused.

146.   Plaintiff reserves the right to allege additional conduct that constitutes further unfair business acts or practices.

### C. *"Fraudulent" Prong*

147.    Defendant violated the "fraudulent" prong of the UCL by misleading Plaintiff and the Class to believe that the Class Products were made in the United States with ingredients and components sourced from the U.S.

148.    Particularly, the Class Products, including the Product Plaintiff purchased state on the packaging and bottles that they are "Brewed in [the] USA" without any qualification, even though the Class Products contain ingredients and components not sourced from the U.S.

149.    Relying on the unqualified "Brewed in [the] USA" language found on the Product's packaging and label, Plaintiff purchased the Product.

150.    Like Plaintiff, Class members purchased the Class Products in reliance on the unqualified "Brewed in [the] USA" or similar language found on the Class Products' labels.

151.    Plaintiff and the Class are not sophisticated experts in ingredient sourcing, product labeling, or marketing practices of the Class Products. They acted reasonably in purchasing the Class Products based on their belief that Defendant's unqualified representations were truthful and lawful.

152.    Plaintiff reserves the right to allege additional conduct that constitutes further fraudulent business acts or practices.

### D. *"Unfair, Deceptive, Untrue or Misleading Advertising" Prong*

153.    In addition, Defendants' advertising is unfair, deceptive, and misleading, as it leads consumers to believe that the Class Products are of U.S. origin, without clear and adequate qualification, despite containing foreign-sourced, grown, or manufactured ingredients and/or components.

154.    Plaintiff, as a reasonable consumer, and the public would likely be, and in fact were, deceived and misled by Defendants' labeling and marketing. They would, and did, interpret Defendants' unqualified representations according to their

ordinary meaning—that the products are made in the USA without foreign ingredients or components.

155.    Plaintiff and the Class acted reasonably in purchasing the Class Products based on their belief that Defendants' unqualified representations were truthful and lawful.

156.    Plaintiff and the Class lost money or property as a result of Defendants' UCL violations because, at a minimum: (a) they would not have purchased the Class Products on the same terms had they known the true facts about Defendants' representations; (b) they paid a price premium for the Class Products due to Defendants' alleged misrepresentations; and (c) the Class Products did not contain the U.S. sourced ingredients and components as represented.

157.    Defendants' alleged unlawful, unfair, and deceptive business practices, along with their unfair, deceptive, untrue, or misleading advertising, present a continuing threat to the public as Defendants continue to engage in unlawful conduct that harms consumers.

158.    Such acts and omissions by Defendants are unlawful, unfair, and/or deceptive, constituting violations of Business & Professions Code §§ 17200, *et seq*. Plaintiff reserves the right to identify additional violations by Defendants as may be uncovered through discovery.

159.    As a direct and proximate result of the acts and representations described above, Defendants have received and continue to receive unearned commercial benefits at the expense of their competitors and the public.

160.    As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent conduct described herein, Defendants have been, and will continue to be, enriched by ill-gotten gains from customers, including Plaintiff, who unwittingly provided money based on Defendants' false and unqualified representations.

161.  Plaintiff was harmed because Defendants took Plaintiff's money through unqualified, unfair, and deceptive representations made regarding the Class Products.

162.  Plaintiff wants to purchase the Class Products again but cannot be certain that he would not be misled again in the future unless and until Defendant makes appropriate changes to its Class Products' labeling and marketing as is requested herein.

163.  The conduct of Defendants, as described above, demonstrates the need for injunctive relief to restrain such acts of unfair competition pursuant to California Business and Professions Code.

164.  Unless enjoined by the court, Defendants will retain the ability to, and may, continue engaging in unfair and deceptive competition and misleading marketing.

165.  As a result, Plaintiff and the Class are entitled to both injunctive and monetary relief.

166.  Pursuant to Bus. & Prof. Code § 17203, Plaintiff and the putative Class are entitled to, and seek, injunctive relief prohibiting Defendants from engaging in such conduct in the future, as well as public injunctive relief concerning Defendants' advertising and sale of products marketed as "Brewed in USA" and other unqualified U.S. origin representations.

167.  In prosecuting this action to enforce important rights affecting the public interest, Plaintiff seeks the recovery of attorneys' fees and costs pursuant to, *inter alia*, Cal. Civ. Proc. Code § 1021.5.

### THIRD CAUSE OF ACTION
**VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL")
(Cal. Bus. & Prof. Code §§ 17500, *et seq*.)**

168.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further alleges as follows:

169.    California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, states that "[i]t is unlawful for any ... corporation ... with intent … to dispose of ... personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement...which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...."

170.    Defendants' material misrepresentations and omissions alleged herein violate Bus. & Prof. Code § 17500, *et seq*. Defendants knew, or should have known, that their misrepresentations and omissions were false, unfair, deceptive, and misleading, including the unqualified representation that the Class Products were made in the United States without foreign-grown, sourced, or manufactured ingredients and components.

171.    Plaintiff and the Class suffered tangible, concrete injuries as a result of Defendants' actions, as set forth herein, because they purchased the Class Products in reliance on Defendants' unqualified representations that the products were made in the United States with domestic ingredients and components.

172.    As a result, pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff and members of the Class are entitled to injunctive relief, equitable relief, and restitution.

173.    Further, Plaintiff and the members of the Class seek an order requiring Defendants to disclose the misrepresentations and request an order awarding Plaintiff restitution for the money wrongfully acquired by Defendants through those misrepresentations.

174.    Additionally, Plaintiff and the members of the Class seek an order requiring Defendants to pay attorneys' fees and costs pursuant to, *inter alia*, Cal. Civ. Proc. Code § 1021.5.

## FOURTH CAUSE OF ACTION
### Breach of Express Warranty

175.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein and further alleges as follows:

176.  Defendants represented to Plaintiff and similarly situated individuals, through product packaging and marketing materials, that the Class Products were "Brewed in [the] USA" without any qualification.

177.  Defendants' representations regarding the Class Products' unqualified U.S. origin constitute affirmations of fact.

178.  Defendants' explicit claim that the Class Products are "Brewed in [the] USA" pertains directly to the nature and composition of the products, forming a fundamental part of the bargain between Defendants and purchasers.

179.  Defendants' statements—featured prominently on the Class Products' packaging and marketing materials—constitute an express warranty regarding the products' U.S. origin, including their ingredients.

180.  Relying on these express warranties, Plaintiff and Class members purchased the Class Products, believing they were entirely manufactured in the United States with ingredients and components sourced from the United States.

181.  Defendants breached these express warranties because the Class Products contained foreign-sourced ingredients and components, which were not disclosed with any qualification, contradicting Defendants' representations of an unqualified U.S. origin.

182.  As a result of Defendants' breach, Plaintiff and Class members suffered harm and are entitled to recover either the full purchase price of the Class Products or the difference between their actual value and the value they would have held if entirely made in the United States with domestic ingredients and components.

183.  Plaintiff and Class members did not receive the benefit of their bargain and sustained additional injuries as alleged herein.

184.   Had Plaintiff and Class members known that the Class Products were not genuinely "Made in the USA" with domestic ingredients and components, they either would not have purchased the products or would not have paid the price Defendant charged.

185.   Defendants' misrepresentation was a substantial factor in causing Plaintiff and the Class economic harm.

## FIFTH CAUSE OF ACTION
### Unjust Enrichment

186.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further alleges as follows:

187.   Plaintiff pleads this unjust enrichment cause of action in the alternative to any contract-based claims.

188.   Under California law, the elements of unjust enrichment are the receipt of a benefit and the unjust retention of that benefit at the expense of another.

189.   Plaintiff and members of the Class conferred non-gratuitous benefits upon Defendants by purchasing the Class Products, which Defendants represented as made in the United States, without any qualification regarding the foreign ingredients contained therein.

190.   Plaintiff and members of the Class allege that Defendants owe them money for the unjust conduct described herein that resulted in the wrongful acquisition of funds.

191.   An undue advantage was taken of Plaintiff's and the Class's lack of knowledge of the deception, resulting in money being extracted to which Defendants had no legal right.

192.   Defendants are therefore indebted to Plaintiff and members of the Class in a specific sum—the amount of money each paid for the Class Products, which Defendants should not retain in equity and good conscience.

193.   Defendants are therefore liable to Plaintiff and members of the Class for the amount of unjust enrichment.

194.   Defendants' retention of any benefit, whether directly or indirectly collected from Plaintiff and members of the Class, violates principles of justice, equity, and good conscience.

195.   As a result, Defendants have been and continue to be unjustly enriched.

196.   Plaintiff and the Class are entitled to recover from Defendants all amounts that Defendants have wrongfully and improperly obtained, and Defendants should be required to disgorge to Plaintiff and members of the Class the benefits they have unjustly received.

197.   Defendants accepted and retained such benefits with knowledge that Plaintiff's and members of the Class's rights were being violated for financial gain. Defendants have been unjustly enriched by retaining the revenues and profits obtained from Plaintiff and members of the Class, and such retention under these circumstances is both unjust and inequitable.

198.   As a direct and proximate result of Defendants' unlawful practices and the retention of monies paid by Plaintiff and members of the Class, Plaintiff and the Class have suffered concrete harm and injury.

199.   Defendants' retention of the non-gratuitous benefits conferred upon them by Plaintiff and members of the Class would be unjust and inequitable.

200.   Plaintiff and members of the Class are entitled to seek disgorgement and restitution of wrongful profits, revenue, and benefits conferred upon Defendants, in a manner to be determined by this Court.

### SIXTH CAUSE OF ACTION
### Negligent Misrepresentation

201.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further alleges as follows:

202.    Defendants have represented to the public, including Plaintiff and the Class, through their marketing, advertising, labeling, and other means, that the Class Products are "Brewed in USA" without qualification, along with other unqualified U.S. origin claims. This is misleading, as a substantial portion of the ingredients are sourced from outside the United States.

203.    Plaintiff alleges that Defendants made these negligent, unqualified representations with the intent to induce the public, including Plaintiff and the putative Class members, to purchase the Class Products.

204.    Plaintiff and other similarly situated persons saw, believed, and relied upon Defendants' negligent, unqualified U.S. origin representations, and purchased the Class Products based on that reliance.

205.    At all relevant times, Defendants made the negligent, unqualified representations alleged herein knowing, or should have known, that they were unfair, deceptive, inaccurate, and misleading.

206.    As a direct and proximate result of Defendants' negligent, unqualified misrepresentations, Plaintiff and similarly situated consumers were induced to purchase the Class Products, purchase more of them, pay a higher price, or choose them over competitors' products. These unlawful, unfair, and deceptive acts caused damages in an amount to be determined at trial for the Class Period.

## SEVENTH CAUSE OF ACTION
### Intentional Misrepresentation

207.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further alleges as follows:

208.    Beginning at a date currently unknown and continuing to the time of the filing of this Complaint, Defendants knowingly represented to Plaintiff and others similarly situated, through product labeling and marketing practices, that the Class Products were of U.S. origin, without qualification of foreign ingredients.

209.  Defendants acted intentionally by willfully and purposefully printing inaccurate and unqualified marketing statements on the labels of the Class Products, including for sales of the Class Products at stores such as Stater Bros.

210.  However, as described above, the unqualified "Brewed in USA" and other unqualified U.S. origin claims are unfair, deceptive, false, and misleading.

211.  Defendants knew these representations were false and, over a period of years, continued to label the Class Products as "Brewed in USA" without qualifying the presence of foreign ingredients.

212.  Defendants further knew that retailers were marketing the Class Products in false or misleading ways, as Defendants designed, manufactured, and affixed the product labeling to the Class Products before supplying them to the retailers.

213.  Plaintiff and the putative Class members saw, believed, and relied on Defendants' misrepresentations when deciding to purchase the Class Products.

214.  As a direct and proximate result of Defendants' intentional misrepresentations, Plaintiff and the putative Class members suffered damages in an amount to be determined at trial.

215.  By engaging in the acts described above, Plaintiff and the putative Class are entitled to recover exemplary or punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment against Defendants as follows, seeking equitable relief in the alternative to legal relief:

- Certification of this action as a class action;

- Appointment of Plaintiff as Class Representative;

- Appointment of Plaintiff's attorneys as Class Counsel;

- That Defendants' wrongful conduct alleged herein be adjudged and decreed to violate the consumer protection statutes asserted herein;

- An Order declaring that Defendants' conduct violated the CLRA, California Civil Code §§ 1750, *et seq.*, and awarding injunctive relief pursuant to Cal. Civ. Code § 1780(a) and (b);

- An Order declaring that Defendants' conduct violated California's Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.*; and awarding injunctive relief pursuant to Bus. & Prof. Code § 17203;

- An Order requiring Defendants to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

- An Order requiring the imposition of a constructive trust and/or disgorgement of Defendants' ill-gotten gains, compelling Defendants to pay restitution to Plaintiff and all members of the Class, and to restore to Plaintiff and Class members all funds acquired through any act or practice declared by this Court to be unlawful, fraudulent, unfair, or deceptive, in violation of laws, statutes, or regulations, or constituting unfair competition, along with pre- and post-judgment interest thereon;

- For pre and post-judgment interest on all amounts awarded;

- For an order of restitution and all other forms of equitable monetary relief, as pleaded, including awarding such relief pursuant to Bus. & Prof. Code § 17535; and/or Bus. & Prof. Code § 17203;

- Actual damages under California Civil Code § 1780(a);

- For public injunctive relief as pleaded or as the Court may deem proper;

- That Defendants be enjoined from continuing the wrongful conduct alleged herein and required to comply with all applicable laws;

- Punitive damages including under California Civil Code § 1780(a) and/or Cal. Civ. Code § 3294;

- General and compensatory damages in an amount to be determined at trial;

- That Plaintiff and each of the other members of the Class recover their costs of suit, including reasonable attorneys' fees and expenses pursuant to, *inter*

*alia*, California Code of Civil Procedure § 1021.5 and California Civil Code § 1780; and

- That Plaintiff and the members of the Class be granted any other relief the Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

216.  Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

Dated: February 21, 2025                    Respectfully submitted,

                              **KAZEROUNI LAW GROUP, APC**

                    By:  _/s/ Abbas Kazerounian_
                              Abbas Kazerounian, Esq.
                              *ATTORNEYS FOR PLAINTIFF*