Jasmine W. Wetherell, CA Bar No. 288835
JWetherell@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, California 90067-1721
Telephone: +1.310.788.9900
Facsimile: +1.310.788.3399

Charles C. Sipos, CA Bar No. 348801
CSipos@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000

Attorneys for Defendants
PEPSICO, INC., CONOPCO, INC.
d/b/a UNILEVER, and PEPSI LIPTON PARTNERSHIP
d/b/a PURE LEAF TEA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| GARO DALDALIAN, | Case No. 2:25-cv-01491-WLH-E |
|---|---|
| Plaintiff, | **DEFENDANTS' MOTION TO DISMISS COMPLAINT** |
| v. | |
| PEPSICO, INC., CONOPCO, INC. d/b/a UNILEVER, and PEPSI LIPTON PARTNERSHIP d/b/a PURE LEAF TEA, | Date: September 5, 2025<br>Time: 1:30 p.m.<br>Location: Courtroom 9B<br>350 W. First St.<br>Los Angeles, CA 90012 |
| Defendants. | |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 5, 2025, at 1:30 p.m. or as soon thereafter as this matter may be heard, in Courtroom 9B of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California 90012, Defendants PepsiCo, Inc., ConopCo, Inc. d/b/a Unilever, and Pepsi Lipton Partnership d/b/a Pure Leaf Tea (together, "Defendants") will and hereby do respectfully move this Court to dismiss Plaintiff Garo Daldalian ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 9(b) and/or 12(b)(6), with prejudice and without leave to amend.

This Motion is made pursuant to Rule 12(b)(6) on the grounds that Plaintiff fails to plausibly state any claims against Defendants. The claims asserted in the Complaint rely on the implausible allegation that "Brewed in USA" misleads consumers into believing that all the raw materials or ingredients used to create the Products—such as tea leaves—were grown or sourced domestically. But no reasonable consumer interprets the narrow "Brewed in USA" claim in such a manner. Additionally, Plaintiff's allegations fall short of the pleading requirements under Rule 8 and/or Rule 9(b) because Plaintiff fails to plausibly allege that the Products fall outside of the statutory safe harbors of California Business & Professions Code § 17533.7. Further, his equitable claims fail as a matter of law because Plaintiff has adequate legal remedies, and Plaintiff also lacks Article III standing to pursue claims for prospective injunctive relief. For all these reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities in support hereof, the Declaration of Jasmine W. Wetherell, the Request for Judicial Notice, all pleadings and documents on file in this case, and such other materials or arguments as the Court may consider.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on May 28, 2025.

Dated:  June 6, 2025

**PERKINS COIE LLP**


By: */s/ Jasmine W. Wetherell*
    Jasmine W. Wetherell
    Charles C. Sipos

Attorneys for Defendants
PEPSICO, INC., CONOPCO, INC. d/b/a UNILEVER, and PEPSI LIPTON PARTNERSHIP d/b/a PURE LEAF TEA

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   BACKGROUND ....................................................................................... 2

III.  LEGAL STANDARD .............................................................................. 4

IV.   ARGUMENT ............................................................................................ 5

    A.    "Brewed in USA" Is Not False nor Misleading to a Reasonable Consumer ...................................................................................... 5

        1.    "Brewed in USA" Is Not Equivalent to a Claim that the Product was Entirely Sourced and Manufactured in the USA ................................................................................... 6

        2.    Reasonable Consumers Know That Tea Leaves Are Not Grown in the United States ................................................ 8

    B.    Failure to Plead Viable Claim Given Section 17533.7 Safe Harbor ............................................................................................ 9

        1.    Section 17533.7 Safe Harbors ............................................... 9

        2.    Plaintiff Does Not and Cannot Plausibly Allege that the Products Fall Outside of the Section 17533.7 Safe Harbors ...................................................................................... 9

        3.    Without Plausible Allegations that the Safe Harbors Do Not Apply, All of Plaintiff's Claims Must Fail ...................... 12

    C.    Plaintiff's Complaint Fails For Additional Independent Reasons ..... 13

        1.    Negligent and Intentional Misrepresentation .......................... 13

        2.    Plaintiff's Request for Equitable Relief Should Be Dismissed ............................................................................. 14

        3.    Plaintiff Lacks Standing to Pursue Injunctive Relief ............. 15

V.    CONCLUSION ....................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alaei v. Rockstar, Inc.*,
   224 F. Supp. 3d 992 (S.D. Cal. 2016) .......................................................... 10, 11

*Andino v. Apple, Inc.*,
   No. 20-cv-01628, 2021 WL 1549667 (E.D. Cal. Apr. 20, 2021) ...................... 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................... 5, 10

*Audrey Heredia v. Sunrise Senior Living LLC*,
   No. 18-cv-01974, 2021 WL 819159 (C.D. Cal. Feb. 10, 2021) ........................ 15

*Baum v. J-B Weld Co., LLC*,
   No. 19-cv-01718, 2020 WL 4923624 (N.D. Cal. Aug. 21, 2020) ............... 12, 13

*Benson v. Kwikset Corp.*,
   152 Cal. App. 4th 1254 (2007) ................................................................... 11

*Biggs v. Bank of Am. Corp.*,
   EDCV 156-00267, 2017 WL 11648863 (C.D. Cal. July 28, 2017) ................... 14

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) .............................................................................. 12

*Clevenger v. Welch Foods, Inc.*,
   501 F. Supp. 3d 875 (C.D. Cal. 2020) .......................................................... 17

*Conservation Force v. Salazar*,
   646 F.3d 1240 (9th Cir. 2011) ...................................................................... 5

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1997) .................................................................. 5, 10

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ................................................................ 10, 15

*Day v. AT&T Corp.*,
   63 Cal. App. 4th 325 (1998) ....................................................................... 14

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Fitzpatrick v. Tyson Foods, Inc.*,
  No. 16-cv-00058, 2016 WL 5395955 (E.D. Cal. Sept. 27, 2016),
  *aff'd*, 714 F. App'x 797 (9th Cir. 2018) .......................................................... 11, 12

*Flodin v. Cent. Garden & Pet Co.*,
  No. 21-cv-01631, 2023 WL 3607278 (N.D. Cal. Mar. 9, 2023).................... 11, 13

*Gustavson v. Wrigley Sales Co.*,
  961 F. Supp. 2d 1100 (N.D. Cal. 2013)................................................................. 6

*Hass v. Citizens of Human., LLC*,
  No. 14-CV-1404, 2016 WL 7097870 (S.D. Cal. Dec. 6, 2016)........................... 11

*Hawyan Yu v. Dr Pepper Snapple Grp., Inc.*,
  No. 18-cv-06664, 2019 WL 2515919 (N.D. Cal. June 18, 2019)....................... 15

*Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*,
  No. 18-cv-06664, 2020 WL 5910071 (N.D. Cal. Oct. 6, 2020) ........................... 9

*Hood v. Handi-Foil Corp.*,
  No. 24-CV-02373, 2024 WL 4008711 (N.D. Cal. Aug. 29, 2024)......... 11, 12, 13

*In re Actimmune Mktg. Litig.*,
  No. C 08-02376, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009).......................... 14

*In re Coca-Cola Products Mktg. & Sales Pracs. Litig. (No. II)*,
  No. 20-15742, 2021 WL 3878654 (9th Cir. Aug. 31, 2021)........................ 15, 16

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017) ............................................................................... 5

*Matic v. U.S. Nutrition, Inc.*,
  No. CV 18-9592, 2019 WL 3084335 (C.D. Cal. Mar. 27, 2019) ...................... 17

*McCausland v. PepsiCo, Inc.*,
  No. 23-cv-04526, 2025 WL 722444 (N.D. Cal. Mar. 6, 2025).......................... 17

*Moore v. Trader Joe's Co.*,
  4 F.4th 874 (9th Cir. 2021) ............................................................................... 7, 8

2:25-cv-01491-WLH-E
DEFENDANTS' MOTION TO DISMISS COMPLAINT

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Pelayo v. Hyundai Motor Am., Inc.*,
  No. 20-cv-01503, 2021 WL 1808628 (C.D. Cal. May 5, 2021) ........................ 15

*Pelayo v. Nestle USA, Inc.*,
  989 F. Supp. 2d 973 (C.D. Cal. 2013)............................................................. 8

*Robinson Helicopter Co. v. Dana Corp.*,
  34 Cal. 4th 979 (2004)................................................................................... 14

*Small v. Fritz Cos.*,
  30 Cal. 4th 167 (2003)................................................................................... 14

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) .................................................................. 14, 15

*Tarvin v. Olly Pub. Benefit Corp.*,
  756 F. Supp. 3d 797 (C.D. Cal. 2024)........................................................... 13

*Usher v. City of Los Angeles*,
  828 F.2d 556 (9th Cir. 1987) .......................................................................... 5

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ................................................................... 5, 10

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) .......................................................................... 6

**STATUTES**

Cal. Bus. & Prof. Code §§ 17200, *et seq.*........................................................... 4

Cal. Bus. & Prof. Code § 17500, *et seq.*............................................................. 4

Cal. Bus. & Prof. Code § 17533.7 .............................................................passim

Cal. Bus. & Prof. Code § 17533.7(b).............................................. 10, 11, 12

Cal. Bus. & Prof. Code § 17533.7(c)........................................ 9, 10, 11, 12, 13

Cal. Civ. Code §§ 1750, *et seq.* ......................................................................... 4

# TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

**RULES**

Fed. R. Civ. P. 8 .......................................................................................... 5, 10

Fed. R. Civ. P. 9(b) .................................................................................... 4, 5, 10

Fed. R. Civ. P. 12 ...................................................................................... 4, 5, 10

**REGULATIONS**

*Notice of Issuance of Enforcement Policy Statement on "Made in
    USA" and Other U.S. Origin Claims*, 62 Fed. Reg. 63756, 63770
    (Dec. 2, 1997) .......................................................................................... 7

**OTHER AUTHORITIES**

Sen. Comm. On Judiciary, Analyses of Sen. Bill No. 633 (2015-2016
    Reg. Sess.) .............................................................................................. 9

2:25-cv-01491-WLH-E
DEFENDANTS' MOTION TO DISMISS COMPLAINT

# I.    INTRODUCTION

This putative class action is built on a flawed premise. Plaintiff claims that PepsiCo, Inc., ConopCo, Inc. d/b/a Unilever, and Pepsi Lipton Partnership d/b/a Pure Leaf Tea (together, "Defendants") misled consumers by printing the phrase "Brewed in USA" in small type on the side label of certain bottled tea products (the "Products"). But Plaintiff does not dispute a key fact: these teas are indeed brewed in the United States. His complaint rests not on a falsehood, but on a strained reading of the label statement—arguing that "Brewed in USA" is deceptive because some raw agricultural inputs and ingredients, like tea leaves and ascorbic acid, are allegedly sourced abroad. This theory fails as a matter of law.

First, the phrase "Brewed in USA" is a narrow, factual representation: it asserts only that the brewing process occurred within the United States. No reasonable consumer would interpret this phrase to mean that all raw materials or ingredients used to create the Products—such as tea leaves—were grown or sourced domestically.

Second, even if "Brewed in USA" were construed more broadly, the claim still falls within a statutory safe harbor. California Business & Professions Code § 17533.7 expressly permits "Made in the USA" and similar claims so long as any foreign-sourced content accounts for only a minor portion of the product's final wholesale value. Courts have consistently held that, absent plausible allegations that a product exceeds these thresholds, claims based on such labeling must be dismissed.

Finally, while the Court can and should dismiss the entire Complaint under the "reasonable consumer" standard or the safe harbor doctrine, several independent grounds further warrant dismissal—or at minimum, substantial narrowing:

- Plaintiff cannot sustain his common-law fraud claims without a plausible allegation that "Brewed in USA" is *actually* false.

- Plaintiff seeks monetary damages—an adequate legal remedy—which precludes equitable relief.

-1-

- Plaintiff lacks standing to pursue injunctive relief because he is not at risk of future harm: he already believes the ingredients are foreign-sourced.

For all these reasons, and as explained more fully below, the Court should dismiss the Complaint in its entirety.

## II.    BACKGROUND

Defendants manufacture and distribute Pure Leaf Brewed Teas (the "Products")—a line of ready-to-drink tea beverages brewed in the United States. The Products are made using high-quality tea leaves sourced from various regions around the world. On each Product's ingredient list, the first ingredient—"brewed [black/green] tea*"—includes an asterisk that directs consumers to an adjacent disclosure: "RAINFOREST ALLIANCE CERTIFIED FIND OUT MORE AT RA.ORG. We're Here to Help. PureLeaf.com or 866.612.2076." *See* Declaration of Jasmine W. Wetherell ("Wetherell Decl."), Ex. A; *Image 1.*



*Image 1*: Lemon – Nutrition Facts Panel

Consumers that visit RA.org will learn that Rainforest Alliance Certified™ tea leaves are produced in 22 countries (primarily in Asia and Africa), *but not in the United States.*[1] Likewise, visitors to PureLeaf.com are informed that the tea leaves used to brew the Products are sourced from Rainforest Alliance Certified™ tea estates in India, Kenya, Indonesia, and Sri Lanka.[2]

---

[1] https://www.rainforest-alliance.org/business/certification/tea-certification-data-report-2023/; *see also* Wetherell Decl. Ex. C.

[2] *See, e.g.*, https://www.pureleaf.com/tea-101/ ("*Importance of Provenance*: Did you know that tea, just like wine, has different taste characteristics according to

Compl. ¶ 58. Further, the "Artisan Inspired Teas" varieties of the Products carry front-of-pack statements that inform consumers of the origin of the tea leaves used to brew the tea. *See* Wetherell Decl., Ex. B (*Image 2*—denoting "The Himalayas" on front label). The Products each also carry, on a side panel, a small infographic that states "BREWED IN USA." *See* Compl. ¶ 47; *see* Wetherell Decl., Ex. A (*Image 3*).



*Image 2*: Darjeeling – Front Label    *Image 3*: Lemon – Side Panel

Plaintiff, a resident of Los Angeles County, alleges that he purchased a single six-pack of Pure Leaf's Lemon Real Brewed Tea from a Stater Bros. grocery store for approximately $8.99. *See* Compl. ¶ 71. He includes a partial image of the "Brewed in USA" phrase and infographic— which appears in small type on a side panel of the Products' label—to support his claim that this wording/infographic was deceptive and influenced his decision to buy the product. Compl. ¶ 47.

---

where and when it is grown? At Pure Leaf, provenance and the origins of our masterfully blended teas are important to us. We offer single-source tea leaves from Rainforest Alliance Certified™ tea estates in India, Kenya, Indonesia and Sri Lanka. Each home brewed tea's origin(s) is uniquely linked to its distinct taste – from mildly smoky Indonesian green tea leaves to full-bodied Kenyan black tea leaves."; *see also* Wetherell Decl. Ex. D.

2:25-cv-01491-WLH-E
DEFENDANTS' MOTION TO DISMISS COMPLAINT

Notably, Plaintiff does not dispute that the Products are, in fact, brewed in the United States. Rather, Plaintiff contends that the "Brewed in USA" statement is false or misleading because the Products are substantially composed of foreign ingredients. Compl. ¶ 6. Specifically, Plaintiff alleges that the Products are made with "tea […] that is not grown, sourced or otherwise made in the United States." Compl. ¶ 8. Plaintiff cites Pure Leaf's website—which touts that the tea leaves are sourced from "Rainforest Alliance Certified™ tea estates in India, Kenya, Indonesia and Sri Lanka"—in support of this allegation. *See* Compl. ¶ 58 fn. 5. Plaintiff also alleges that some varieties of the Products[3] (that Plaintiff does not allege to have purchased) also contain ascorbic acid, which "is also an imported ingredient." Compl. ¶ 59. Plaintiff provides no facts to support his allegation that ascorbic acid is an "imported ingredient." Plaintiff also alleges, "on information and belief," that Defendants charged a price premium for the Products based on the "Brewed in USA" claim. Compl. ¶ 65.

Based on these allegations, Plaintiff brings claims for: (1) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*.; (2) California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq*.; (3) California's False Advertising Law ("FAL"), Bus. & Prof. Code § 17500, *et seq*.; (4) breach of express warranty; (5) unjust enrichment; (6) negligent misrepresentation; and (7) intentional misrepresentation.

### III.    LEGAL STANDARD

Defendants move to dismiss the Complaint in full pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). Additionally, Defendants move pursuant to Rule 12(b)(1) to dismiss Plaintiff's claim for injunctive relief.

"In alleging fraud or mistake, a party must state with particularity the

---

[3] Plaintiff purports to bring his claims as to all substantially similar varieties of Pure Leaf's ready-to-drink brewed tea products that carry a "Brewed in USA" claim, "regardless of brand or size." *See* Compl. ¶ 12.

circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). "Rule 9(b) serves to protect professionals from the harm that comes from being subject to fraud charges." *Id.* at 1104 (internal quotation marks and citation omitted). The "strictures of Rule 8" are applicable under Rule 9(b), including that a complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 687 (2009); Fed. R. Civ. P. 8(a)(2).

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the claims alleged in the complaint. Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *See Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation marks and citation omitted). When evaluating such a motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017). It must also "draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

## IV.   ARGUMENT

### A.   "Brewed in USA" Is Not False nor Misleading to a Reasonable Consumer

To state a claim under California's consumer protection statutes—the UCL, FAL, and CLRA—a plaintiff must plead facts showing that the defendant's statements or conduct would likely mislead a reasonable consumer. Courts apply what's known as the "reasonable consumer" standard. As the Ninth Circuit has explained, these statutes require a plaintiff to show that "members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir.

-5-

2008) (citation omitted); *see also Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1130 (N.D. Cal. 2013).

Plaintiff's claims fall short of this standard. The Complaint does not plausibly allege that a reasonable consumer would be misled by the challenged statement, nor does it explain how the label at issue conveys a false or deceptive message to an ordinary shopper exercising common sense. Without a viable theory of deception under this objective test, Plaintiff cannot proceed. The law does not protect subjective misunderstandings or strained interpretations. It protects consumers acting reasonably. Because Plaintiff fails to meet this threshold, the entire Complaint must be dismissed.

    1.    <u>"Brewed in USA" Is Not Equivalent to a Claim that the Product was Entirely Sourced and Manufactured in the USA</u>

First, Plaintiff's allegations demonstrate a strained misunderstanding of the phrase "Brewed in USA." *See, e.g.*, Compl. ¶ 34 (Plaintiff believed that "Brewed in USA" meant that the Products were "made in the United States with ingredients and components sourced from within the United States.") "Brewed in USA" does not assert that every component of the product—from raw materials to ingredients to packaging—is of domestic origin. Nor does it convey that the entire agricultural growing, harvesting, and manufacturing process occurred in the United States. Rather, it makes a narrow and precise representation: that the *brewing*—the central transformative step in producing the tea beverage, involving heating water, extracting flavor and compounds from tea leaves, filtering, and blending, all according to controlled processes—took place domestically. Plaintiff nonetheless alleges that "brew" is synonymous with "make" because: "when someone says, "I'll brew some tea," it is understood to refer to the entire process of preparing and serving tea, not just the single act of steeping the leaves in hot water." Compl. ¶ 54. But, notably, Plaintiff does not allege that "I'll brew some tea," would also refer to growing and harvesting the tea leaves. Common sense does not support such an expansive

-6-

interpretation.

   To equate "Brewed in USA" with "Manufactured in USA" is to ignore the plain language used and to misread the consumer message conveyed. "Manufactured in USA" is a much broader claim, typically subject to the standard that "all or virtually all" of a product be made from domestic components. But that's not what the label says—and that's not what consumers reasonably understand it to mean. *See Moore v. Trader Joe's Co.*, 4 F.4th 874, 882–83 (9th Cir. 2021) ("[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." (internal quotation marks and citation omitted)).

   Moreover, the Federal Trade Commission ("FTC") allows specific, narrow claims—like "Brewed in USA"—as long as they are truthful, substantiated, and clearly refer to a distinct process. As the FTC explained:

> Regardless of whether a product as a whole is all or virtually all made in the United States, ***a marketer may make a claim that a particular manufacturing or other process was performed in the United States***, or that a particular part was manufactured in the United States, ***provided that the claim is truthful and substantiated and that reasonable consumers would understand the claim to refer to a specific process*** or part and not to the general manufacture of the product. This category would include claims such as that a product is "designed" or "painted" or "written" in the United States.

*Notice of Issuance of Enforcement Policy Statement on "Made in USA" and Other U.S. Origin Claims*, 62 Fed. Reg. 63756, 63770 (Dec. 2, 1997) (the "FTC Policy Statement"). This is exactly what is conveyed by "Brewed in USA." It refers to the specific and truthful fact that the *process* of brewing—where water becomes tea— was performed in the United States. It says nothing about the geographic origin of the tea leaves or other ingredients, and no reasonable consumer would read it as a statement that all the raw materials and ingredients are domestically grown or sourced.

2:25-cv-01491-WLH-E
DEFENDANTS' MOTION TO DISMISS COMPLAINT

2.    Reasonable Consumers Know That Tea Leaves Are Not Grown
in the United States.

Second, Plaintiff's theory of deception also falters against a backdrop of common knowledge: tea leaves are not a domestic crop. Reasonable consumers understand this. *Moore*, 4 F.4th at 882 ("[I]nformation available to a consumer is not limited to the physical label and may involve contextual inferences regarding the product itself[.]"). The United States is not known for growing tea, and it never has been. In fact, one of the most iconic events in American history—the Boston Tea Party—centered on tea imported from British-controlled India and China, underscoring how deeply the reliance on foreign-grown tea has been embedded in the nation's history and consciousness. That was in 1773, and little has changed since. The overwhelming majority of the world's tea supply continues to come from countries like India, China, Sri Lanka, and Kenya—regions known for climates and terrains suited to tea cultivation.

Against this backdrop, the idea that a reasonable consumer would be misled by the phrase "Brewed in USA" into believing that the tea leaves used to brew the Products were domestically grown defies common sense. No one expects tropical crops to spring from American soil. Consumers buying ready-to-drink bottled tea in the United States don't assume the tea leaves were harvested in Missouri or California any more than they assume their morning coffee was brewed from beans grown in Kansas. *See, e.g.*, *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013) (dismissing consumer deception claims based on pasta's "All Natural" label, reasoning "the reasonable consumer is aware that Buitoni Pastas are not springing fully-formed from Ravioli trees and Tortellini bushes") (internal quotation marks omitted). In this context, "Brewed in USA" reasonably—and accurately—describes the location where the *process* of steeping tea leaves occurred. It does not suggest, and cannot be reasonably interpreted as suggesting, that the raw materials, agricultural inputs and/or other minor ingredients all originated in the

-8-

1    United States.

2         For all of these reasons, Plaintiff's claims must be dismissed.[4]

3    **B.    Failure to Plead Viable Claim Given Section 17533.7 Safe Harbor**

4         Even assuming—contrary to its plain meaning—that "Brewed in USA" is

5    equivalent to "Manufactured in USA," Plaintiff's claims still fail as a matter of law

6    because Section 17533.7 of the California Business and Professions Code provides

7    clear safe harbors that foreclose liability under the facts alleged.

8              1.    Section 17533.7 Safe Harbors

9         Section 17533.7 prohibits labeling a product as "Made in the U.S.A." or

10    synonymous phrases if any part of the product has been "entirely or substantially"

11    made outside the United States. Recognizing the realities of global supply chains, the

12    Legislature amended the statute in 2016 to include two safe harbors. *See* Sen. Comm.

13    On Judiciary, Analyses of Sen. Bill No. 633 (2015-2016 Reg. Sess.)[5]. A manufacturer

14    may lawfully use a U.S.-origin label if: (1) the foreign content accounts for no more

15    than 5% of the product's final wholesale value; or (2) the foreign content does not

16    exceed 10% of that value and the manufacturer can show the material is not

17    domestically available. *See* CAL. BUS. & PROF. CODE § 17533.7(c)(1). Because

18    Plaintiff does not plausibly allege that any foreign material in the Products exceeds

19    these statutory thresholds, his claims necessarily fail. Courts have repeatedly

20    dismissed complaints that fail this standard.

21              2.    Plaintiff Does Not and Cannot Plausibly Allege that the
22                    Products Fall Outside of the Section 17533.7 Safe Harbors

23         Each of Plaintiff's claims—including his CLRA, FAL, and UCL claims—all

24    _____

25    [4] Plaintiff's warranty, unjust enrichment, and misrepresentation claims rely on the same allegations as his consumer protection claims, and thus fail for the same reason: there is no plausible deception. *See, e.g., Hawyuan Yu v. Dr Pepper Snapple Grp.,*

26    *Inc.*, No. 18-cv-06664, 2020 WL 5910071, at *7 (N.D. Cal. Oct. 6, 2020) (dismissing unjust enrichment and breach of warranty claims premised on same defective

27    allegations of deception under consumer protection laws).
[5] *Also available at* http://leginfo.ca.gov/pub/15-16/bill/sen/sb_0601-

28    0650/sb_633_cfa_20150521_145456_sen_floor.html

sound in fraud, thus the Complaint must meet not only the general plausibility requirements of Rules 8(a) and 12(b)(6), but also the heightened pleading standards of Rule 9(b). *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). As the Ninth Circuit has made clear, even when fraud is not a necessary element of a claim, if the plaintiff chooses to allege fraudulent conduct, Rule 9(b) governs. *See Vess*, 317 F.3d at 1103–04. Under that rule, allegations of fraud must be stated "with particularity," which means the plaintiff must plead the "who, what, when, where, and how" of the alleged misconduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997); *see also Alaei v. Rockstar, Inc.*, 224 F. Supp. 3d 992, 999–1000 (S.D. Cal. 2016).

Plaintiff's Complaint does not meet Rule 9(b)'s heightened pleading standard because it fails to allege *any* facts showing that the Products fall outside the statutory safe harbors in Section 17533.7(b)-(c). To avoid those safe harbors, Plaintiff must do more than offer "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. He must instead "specify . . . what percentage of Defendant[s'] products are comprised of foreign-sourced ingredients." *Alaei*, 224 F. Supp. 3d at 1000. His failure to do so here is fatal to his claims.

Other than the foreign source of the tea leaves used to brew the Products, Plaintiff offers no additional facts. Plaintiff does not allege any facts regarding the amount of tea leaves or other ingredients in the Products or the cost of those ingredients. Plaintiff alleges that ascorbic acid is an "imported ingredient," but presents no facts to support that statement.[6] Most critically, Plaintiff fails to allege that the tea leaves—or any other so-called "foreign ingredients"—comprise more than any specific percentage of the Products' final wholesale value.

---

[6] Beyond a single conclusory allegation, Plaintiff does not allege any facts to support his assertion that ascorbic acid is an "imported ingredient." *See* Compl. ¶ 59. Additionally, ascorbic acid is not an ingredient in the single Product that Plaintiff purchased—the Lemon Real Brewed Tea. *See* Compl. ¶ 7; *see also* RJN, Ex. A. and *Image 1* (Lemon Brewed Tea - Ingredient List).

-10-

Courts routinely dismiss similarly deficient pleadings in this context. *See, e.g.*, *Hood v. Handi-Foil Corp*., No. 24-CV-02373, 2024 WL 4008711, at *3 (N.D. Cal. Aug. 29, 2024) (rejecting "generalized averments" that foreign parts made up more than 10% of the product's wholesale value as "insufficient and vague"); *Flodin v. Cent. Garden & Pet Co*., No. 21-cv-01631, 2023 WL 3607278, at *2 (N.D. Cal. Mar. 9, 2023) (dismissing complaint that lacked plausible allegations as to the percentage of foreign content, whether "by value, weight, or any other metric"); *Fitzpatrick v. Tyson Foods, Inc*., No. 16-cv-00058, 2016 WL 5395955, at *4 (E.D. Cal. Sept. 27, 2016) (dismissing plaintiff's UCL, FAL, and CLRA claims for failure to include any allegations regarding the percentage of foreign-sourced materials contained in Defendant's products), *aff'd*, 714 F. App'x 797 (9th Cir. 2018); *Alaei*, 224 F. Supp. 3d at 1000 (dismissing plaintiff's UCL and CLRA claims for failure to adequately allege a violation of section 17533.7); *Hass v. Citizens of Human., LLC*, No. 14-CV-1404, 2016 WL 7097870, at *4 (S.D. Cal. Dec. 6, 2016) (rejecting conclusory assertions about foreign content as "insufficient to raise a plausible inference" under the statute).

Plaintiff's failure to allege that the Products fall outside the safe harbors in Section 17533.7(b)–(c) is telling. This is more than a mere pleading oversight; it underscores the inherent implausibility of Plaintiff's theory. The Products are ready-to-drink brewed tea beverages—liquids produced by steeping tea leaves in water, then discarding the leaves. What consumers purchase and consume is the resulting filtered extract: water infused with trace amounts of naturally occurring compounds. Tea leaves, in this context, exemplify what Section 17533.7 treats as "raw materials." Tea leaves are not ingredients in the finished product; in fact, they are discarded after the brewing process. *See* Image 1 (Nutrition Facts panel for Lemon Tea product; tea leaves are not listed as an ingredient). Thus, tea leaves cannot plausibly be deemed a "significant portion or component" of the final product. *See Benson v. Kwikset Corp*.,

152 Cal. App. 4th 1254, 1272 (2007) (Section 17533.7 is not violated where the final product is made in the United States, even if the "raw materials" used in the production are acquired from a foreign source).

In short, the finished Products consist almost entirely of water. The tea leaves serve only as a flavoring agent—not a principal component in any economic or physical sense. Plaintiff neither alleges—nor could plausibly allege—that tea leaves account for even 5% of the Products' final wholesale value, particularly where the leaves are not present in the finished product.

### 3.    Without Plausible Allegations that the Safe Harbors Do Not Apply, All of Plaintiff's Claims Must Fail.

All of Plaintiff's claims collapse without a plausible violation of Section 17533.7, as each claim is barred by California's safe-harbor doctrine. As the California Supreme Court has held, plaintiffs cannot bypass legislative judgment by rebranding lawful conduct as unlawful under general consumer statutes. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999) ("Courts may not simply impose their own notions of the day as to what is fair or unfair."). Section 17533.7(b)-(c) creates just such a safe harbor: a manufacturer may label products "Made in the USA" despite minor foreign content if statutory thresholds are met. By amending the statute to prohibit domestic-origin claims in some cases—but not others—the Legislature made clear that no action lies where a safe harbor applies. *Fitzpatrick*, 2016 WL 5395955, at *5. Allowing UCL, CLRA, FAL, misrepresentation, or warranty claims in that context would undermine the Legislature's policy judgment. As one court put it, "If there is no violation of § 17533.7 and its safe harbor, no state law claim will lie to the extent it arises out of the same conduct." *Baum v. J-B Weld Co., LLC*, No. 19-cv-01718, 2020 WL 4923624, at *3 (N.D. Cal. Aug. 21, 2020).

*Hood* is directly on point. In *Hood*, the plaintiff brought five claims—CLRA,

UCL (unfair, unlawful, and fraudulent prongs), FAL, breach of express and implied warranties, and unjust enrichment. 2024 WL 4008711, at *1. The plaintiff alleged that the defendant's aluminum pans and containers were falsely labeled with "Made in the USA," because they contained "significant foreign bauxite content." *Id.* So, according to plaintiff, the products violated Section 17533.7 and FTC's U.S. Origin Claims rules/regulations. *Id.* The court in *Hood* found that plaintiff failed to include specific factual averments to suggest the products fell outside of the safe harbor described in Section 17533.7(c). *Id.* at *2–3 ("The complaint offers no basis to support the greater-than-10-percent claim, and her mere legal conclusions to this point do not constitute factual averments such that 9(b) is satisfied."). This failure doomed not just plaintiff's UCL claim (which was explicitly predicated on a violation of Section 17533.7), but *all* of plaintiff's claims predicated on the same theory of deception. *Id.* at *3. *See also Flodin*, 2023 WL 3607278, at *2 (dismissing CLRA, UCL, FAL, restitution and unjust enrichment claims as foreclosed by Section 17533.7 safe harbors); *Baum*, 2020 WL 4923624, at *3–4 ("[T]he 5% safe-harbor was meant to bar suits made on false 'Made in USA' claims for merchandise falling within that safe harbor. There is no reason to believe that bar does not apply to *all* California laws addressing this subject[.]")

The same outcome is warranted here. All of Plaintiff's claims are based on the same conduct—Defendant's labeling of its Products with an allegedly false "Brewed in USA" statement. But Plaintiff has failed to present any facts to establish that the Products fall outside the Section 17533.7 safe harbors. This failure requires dismissal of all of Plaintiff's claims.

**C.    Plaintiff's Complaint Fails For Additional Independent Reasons**

1.    <u>Negligent and Intentional Misrepresentation</u>

Plaintiff also brings common-law fraud claims for intentional and negligent misrepresentation. *See Tarvin v. Olly Pub. Benefit Corp.*, 756 F. Supp. 3d 797, 808

(C.D. Cal. 2024) (treating intentional and negligent misrepresentation as common-law fraud); *see also Biggs v. Bank of Am. Corp.*, EDCV 156-00267, 2017 WL 11648863, at *3 (C.D. Cal. July 28, 2017) (same). Under California law, intentional misrepresentation requires: (1) a false statement; (2) knowledge of its falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004). Negligent misrepresentation differs only in the mental state: instead of knowing falsity, the defendant must lack reasonable grounds for believing the statement to be true. *Small v. Fritz Cos.*, 30 Cal. 4th 167, 174 (2003).

These common-law claims impose a higher bar than California's consumer-protection statutes. Under the UCL, FAL, and CLRA, a technically true statement may still be actionable if it is likely to mislead a reasonable consumer. *See In re Actimmune Mktg. Litig.*, No. C 08-02376, 2009 WL 3740648, at *7 (N.D. Cal. Nov. 6, 2009); *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332–34 (1998). But for intentional or negligent misrepresentation, the statement must be actually false.

Here, Plaintiff does not—and cannot plausibly—allege that the Products were not brewed in the United States. That undisputed fact defeats both of the common-law fraud claims. Plaintiff's theory rests entirely on his subjective interpretation of "Brewed in USA" as meaning that all ingredients were domestically sourced. But the Products are, in fact, brewed in the United States—a fact Plaintiff does not dispute. That alone forecloses any claim of falsity and requires dismissal of his common-law fraud claims.

2.    Plaintiff's Request for Equitable Relief Should Be Dismissed

Plaintiffs assert various claims for equitable relief under the UCL and FAL. Compl. ¶¶ 40, 172, and Prayer for Relief. These requests for equitable relief should be dismissed with prejudice under the Ninth Circuit's binding opinion in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) (as amended). *Sonner* holds

that a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA." *Id.* at 844. Applying *Sonner*, courts throughout this Circuit have consistently dismissed claims for equitable relief in consumer protection cases where legal remedies are available. *See, e.g.*, *Audrey Heredia v. Sunrise Senior Living LLC*, No. 18-cv-01974, 2021 WL 819159, at *2–3 (C.D. Cal. Feb. 10, 2021); *Andino v. Apple, Inc.*, No. 20-cv-01628, 2021 WL 1549667, at *5 (E.D. Cal. Apr. 20, 2021).

The same result is warranted here. As in *Audrey Heredia* and *Andino*, Plaintiffs' claim for damages is "based on the same factual predicate as [Plaintiff's] claim for restitution," i.e., the recovery of monies spent as a result of the challenged claim. *Audrey Heredia*, 2021 WL 819159, at *4; *Andino*, 2021 WL 1549667, at *5. So, as in *Audrey Heredia* and *Andino*, Plaintiff "admit[s] they have an adequate legal remedy—available through their breach of warranty [and CLRA] claims—which necessitates dismissal of any claims for equitable relief." *See Pelayo v. Hyundai Motor Am., Inc.*, No. 20-cv-01503, 2021 WL 1808628, at *9 (C.D. Cal. May 5, 2021); *Audrey Heredia*, 2021 WL 819159, at *4–5; *Andino*, 2021 WL 1549667, at *5.

### 3.    Plaintiff Lacks Standing to Pursue Injunctive Relief

Separately, Plaintiff lacks standing to seek injunctive relief. A plaintiff seeking injunctive relief in a putative class action must have Article III standing to seek that relief, which requires a plausible allegation of potential future harm to the plaintiff. *See Davidson*, 889 F.3d at 969–70; *In re Coca-Cola Products Mktg. & Sales Pracs. Litig. (No. II)*, No. 20-15742, 2021 WL 3878654 (9th Cir. Aug. 31, 2021). In a labeling case, this requires some plausible allegation that the plaintiff intends to purchase the products in the future but cannot rely on its labeling and is therefore deterred. *Hawyan Yu v. Dr Pepper Snapple Grp., Inc.*, No. 18-cv-06664, 2019 WL 2515919, at *5 (N.D. Cal. June 18, 2019) (no standing to seek injunctive relief when "Plaintiff has not alleged that he would purchase the products-in-question if the

representation 'Natural' or 'All Natural Ingredients' was removed"). But it is not enough for plaintiffs in a labeling case to allege they would consider purchasing the product-at-issue if it "were properly labeled." *In re Coca-Cola*, 2021 WL 3878654, at *2 (finding alleged injury too speculative). Rather, plaintiffs must allege they have an immediate, unconditional desire to buy the products, but are unwilling or unable to do so because of the allegedly misleading labeling. *Id.*

These standards are not met here. Plaintiff alleges, in conclusory fashion, that he wishes to purchase the Products again but cannot be certain he won't be misled "unless and until" Defendant changes the labeling. *See* Compl. ¶ 162. But that assertion is flatly contradicted by Plaintiff's own allegations, which show he has no genuine intention to repurchase the Products.

The Complaint repeatedly states that Plaintiff sought a beverage "made in the United States with U.S. ingredients" and would not have purchased the Products had he known their ingredients were not of domestic origin. *See, e.g.*, Compl. ¶ 71 ("Plaintiff was seeking to purchase a product made in the United States with U.S. ingredients"); ¶ 77 ("Had Plaintiff known that the Class Products and their ingredients were not actually of U.S. origin, he would not have purchased the Product."); *see also* ¶¶ 82–85 (alleging that foreign-sourced ingredients are lower quality and riskier to health, the environment, and the U.S. economy).

Moreover, Plaintiff concedes that Defendant openly discloses on its website that the tea leaves used to brew the Products are not sourced from the United States. *See* Compl. ¶ 58. That admission is fatal to Plaintiff's standing. Having alleged that he now knows the relevant facts—and that he would not have purchased the Products had he known them—Plaintiff cannot plausibly claim he faces a risk of future deception. The law is clear: once a plaintiff gains the relevant knowledge, any risk of future injury becomes speculative and insufficient for Article III standing.

Courts have consistently dismissed injunctive relief claims in similar

2:25-cv-01491-WLH-E
DEFENDANTS' MOTION TO DISMISS COMPLAINT

circumstances. *See Clevenger v. Welch Foods, Inc.*, 501 F. Supp. 3d 875, 881–82 (C.D. Cal. 2020) (no standing for injunctive relief in candy slack-fill case where plaintiff became aware that product labels accurately disclosed net weight and amount of candy inside package); *Matic v. U.S. Nutrition, Inc.*, No. CV 18-9592, 2019 WL 3084335, at *8 (C.D. Cal. Mar. 27, 2019) (dismissing injunctive relief claim because "[t]he allegations in the complaint show that Plaintiff is now aware that he can find out how much protein powder is in Defendant's containers by simply looking at the label."); *McCausland v. PepsiCo, Inc.*, N. 23-cv-04526, 2025 WL 722444, at *3–4 (N.D. Cal. Mar. 6, 2025) (same).

Plaintiff's conditional statement that he might purchase the Products again "unless and until" the label is revised does not cure the problem. *See* Compl. ¶ 162. Where, as here, a plaintiff knows the very fact he claims would mislead him again, the threat of future harm is neither real nor imminent. Plaintiff's claim for injunctive relief must be dismissed for lack of Article III standing.

## V.    CONCLUSION

For the foregoing reasons, Defendants request that the Court grant their Motion and dismiss Plaintiff's Complaint in full, with prejudice.

Dated:  June 6, 2025                    **PERKINS COIE LLP**


                                        By: */s/ Jasmine W. Wetherell*
                                           Jasmine W. Wetherell
                                           Charles C. Sipos

                                        Attorneys for Defendants
                                        PEPSICO, INC., CONOPCO, INC. d/b/a
                                        UNILEVER, and PEPSI LIPTON
                                        PARTNERSHIP d/b/a PURE LEAF TEA

182109369