UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARO DALDALIAN,<br><br>Plaintiff,<br><br>v.<br><br>PEPSICO, INC., CONOPCO, INC. d/b/a UNILEVER, and PEPSI LIPTON PARTNERSHIP d/b/a PURE LEAF TEA,<br><br>Defendants. | Case No. 2:25-cv-01491-WLH-E<br><br>**ORDER RE MOTION TO DISMISS [15]** |

Before the Court is Defendants' (PepsiCo, Inc., ConopCo, Inc. d/b/a Unilever, and Pepsi Lipton Partnership d/b/a Pure Leaf Tea (collectively, "Defendants")) Motion to Dismiss ("Motion") against Plaintiff Garo Daldalian ("Plaintiff"). (Mot., Docket No. 15). No party filed a written request for oral argument stating that an attorney with five years or less of experience would be arguing the matter. (*See* Standing Order, Docket No. 8 at 16). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for September 5, 2025, is **VACATED** and the matter

taken off calendar. For the reasons set forth below, the Court **GRANTS** Defendant's Motion to Dismiss.

I.  **BACKGROUND**

On February 21, 2025, Plaintiff brought this putative class action, alleging "unlawful labeling" practices associated with Defendants' Pure Leaf's Lemon Real Brewed Tea (the "Product"), as purchased by Plaintiff on or about January 22, 2024. (Compl. ¶¶ 1, 7, 67). While shopping for beverages at a Pasadena Stater Bros. grocery store, Plaintiff discovered the Product, "bearing a representation on both the bottles and outer packaging that [it] was made (specifically, *brewed*) in the USA, with the unmistakable and prominent iconography of the U.S. flag placed immediately above the 'Brewed in USA' claim." (*Id.* ¶ 68) (emphasis added).



Plaintiff interpreted this label as an "unqualified U.S. origin representation" that the Product was made in the United States with domestic ingredients. (*Id.* ¶ 71). Plaintiff, in reliance on such representation, bought a six-pack of the Product for approximately $8.99. (*Id.*).

On behalf of a California class,[1] Plaintiff seeks to remedy Defendants' allegedly deceptive "Brewed in USA" labeling placed on similar varieties of Pure Leaf ready to drink tea products—"including but not limited to, Subtly Sweet Tea, Subtly Sweet

---

[1] "All persons in California who purchased one or more of the Class Products labeled "Brewed in USA" on the product or packaging, and that were made with or contained ingredients or components not grown or manufactured in the USA, within four years prior to the filing of this Complaint." (Compl. ¶ 92).

2

Peach Tea, Subtly Sweet Lemon Tea, Sweet Tea, Lemon Tea, Raspberry Tea, Extra Sweet Tea, Unsweetened Tea, Unsweetened Tea with Lemon, Unsweetened Green Tea, Green Tea, Honey Green Tea, and Tea & Lemonade" (collectively, the "Class Products"). (*Id.* ¶ 12). The gravamen of Plaintiff's class allegations asserts that when class members encounter "an unqualified 'Made in USA' or similar claim, they reasonably assume the products contain no-foreign sourced ingredients or components." (*Id.* ¶ 72). Yet, Defendants "advertise, market, promote, and sell the Class Products as 'Brewed in the USA' (without disclosing the use of foreign ingredients), when in fact this claim is false." (*Id.* ¶ 29). To prove the use of ingredients sourced outside of the U.S., Plaintiff cites to a Pure Leaf website statement that their products "use the highest quality, ethically sourced tea leaves from Rainforest Alliance Certified tea estates in India, Kenya, Indonesia and Sri Lanka to give you an authentic tea experience, from first sip to last." (Compl. ¶ 53 n.4). Based on these allegations, Plaintiff—on behalf of the putative class—brings claims under (1) California's Consumer Legal Remedies Act ("CLRA"); (2) California's Unfair Competition Law ("UCL"); (3) California's False Advertising Law ("FAL"); (4) breach of express warranty, as well as claims for (5) unjust enrichment; (6) negligent misrepresentation; and (7) intentional misrepresentation. (*Id.* ¶ 9).

On June 6, 2025, Defendants filed this instant motion to dismiss Plaintiff's Complaint along with a Request for Judicial Notice. (Docket Nos. 15, 16). Plaintiff filed an opposition on July 7, 2025 (Opp'n, Docket No. 23), to which Defendants replied on July 28, 2025. (Reply, Docket No. 24). The matter is fully briefed.

**II.    DISCUSSION**

In seeking to dismiss Plaintiff's Complaint, Defendants argue that Plaintiff has failed to state a claim on which relief may be granted under Fed. R. Civ. P. 12(b)(6) for three primary reasons: (1) no reasonable consumer would interpret the "Brewed in USA" claim as denoting that the Class Products' raw materials and ingredients were all grown or sourced domestically, (2) the "Brewed in USA" claim falls within a

3

statutory safe harbor, and (3) Plaintiff's allegations do not meet the heightened pleading requirements of Rule 8 and/or Rule 9(b). (*See generally* Mot.) The Court addresses each in turn.

### A. **Failure to State a Claim Under Rule 12(b)(6)**

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). The court, however, is not required to accept as true legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678. A claim is considered to have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In deciding a Rule 12(b)(6) motion, a court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

When a plaintiff alleges fraud or mistake, they "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (citation omitted). This requirement is in addition to the traditional plausibility

standards previously discussed. The purpose of Rule 9(b) is threefold: "(1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints 'as a pretext for the discovery of unknown wrongs'"; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to 'prohibit [ ] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citing *In re Stac Elecs. Sec. Litig.,* 89 F.3d 1399, 1405 (9th Cir.1996)).

### B. <u>Analysis</u>

As a preliminary matter, because Plaintiff's "CLRA, FAL, and UCL causes of action are all grounded in fraud," they must meet the heightened pleading requirements of Rule 9(b).[2] *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). Even "[i]n cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct." *Vess*, 317 F.3d at 1103–04. Accordingly, Plaintiff's claims under California's consumer protection statutes are subject to a higher showing of particularity. *See* Fed. R. Civ. P. 9(b); *see also Kearns*, 567 F.3d at 1125.

    *i.*    *The "Reasonable Consumer" Test – FAL, UCL, and CLRA Claims*

Together with the UCL and FAL, the CLRA prohibits "not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020). Plaintiff's

---

[2] Plaintiff's Complaint is riddled with references to "fraudulent" activity by Defendants. (*See, e.g.*, Compl. ¶ 147 ("Defendant[s] violated the "fraudulent" prong of the UCL by misleading Plaintiff and the Class to believe that the Class Products were made in the United States with ingredients and components sourced from the U.S."); *Id.* ¶ 160 ("As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent conduct described herein, Defendants have been, and will continue to be, enriched by ill-gotten gains from customers, including Plaintiff"); *Id.* ¶ 49 (noting "Defendants' intent to convey a false and unqualified claim of U.S. origin for the Class Products"); *Id.* ¶¶ 207–215 (cause of action for intentional misrepresentation).

5

1  claims under these consumer protection statutes are governed by the "reasonable
2  consumer" test.  That standard requires Plaintiff to demonstrate that "members of the
3  public are *likely* to be deceived." *Williams v. Gerber Products Co.*, 552 F.3d 934, 938
4  (9th Cir. 2008) (citation omitted and emphasis added).  Pointing to a mere possibility
5  that a label "might conceivably be misunderstood by some few consumers viewing it
6  in an unreasonable manner" is insufficient. *Lavie v. Procter & Gamble Co.*, 105
7  Cal.App.4th 496 (2003).  The "reasonable consumer standard" instead requires a
8  showing "that a significant portion of the general consuming public or of targeted
9  consumers, acting reasonably in the circumstances, could be misled." *Id.*; *see also*
10  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016).

11        The Court—even after resolving all reasonable inferences in Plaintiff's favor—
12  struggles to understand how Plaintiff's claims under the California consumer
13  protection statutes can pass muster under the "reasonable consumer" test.  Merriam-
14  Webster defines "brewed" in the tea context as "to prepare (a drink or other liquid) by
15  infusion in hot water." *Brewed*, Merriam-Webster Online Dictionary,
16  https://www.merriam-webster.com/dictionary/brewed (last visited Sep. 3, 2025).  No
17  part of that definition would signal to a reasonable consumer that "Brewed in USA" in
18  the Pure Leaf bottled tea context means that the requisite ingredients of the final
19  product were all grown and/or sourced from the United States.  The *preparation* of the
20  tea itself occurred domestically.  The Court cannot credibly give weight to Plaintiff's
21  "fanciful" construal of the "Brewed in USA" label—namely, that such a designation is
22  "an express U.S. origin representation" indicating the raw materials and ingredients in
23  the Class Products are domestically sourced and manufactured.  (*See* Compl. ¶¶ 5–7).
24  Although a determination of what a "reasonable person" might believe is generally a
25  question of fact and inappropriate for resolution on a motion to dismiss, *see*
26  *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1082 (N.D. Cal. 2022), the Court
27  views the instant Motion to trigger one of those rare exceptions as a matter of law.
28  *See Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012)

1  (affirming dismissal with prejudice of FAL, CLRA, and UCL claims because no
2  reasonable consumer would be misled by the disputed label).  The Ninth Circuit has
3  made clear that a "representation does not become 'false and deceptive' merely
4  because it will be unreasonably misunderstood by an insignificant and
5  unrepresentative segment of the class of persons to whom the representation is
6  addressed."  *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012).
7  The mere fact that the label is accompanied by a water droplet styled as an American
8  flag does not change that reality; no reasonable consumer would view the
9  "iconography of the U.S. flag" (*see* Compl. ¶ 74) immediately above "Brewed in
10 USA" as altering the plain language meaning of the phrase.

11         Plaintiff's reliance on the Collins Dictionary Thesaurus to bolster his claim that
12 "brew" is equivalent to "make" is unpersuasive.  (*See* Compl. ¶ 53 n.4).  "Making" tea
13 and "brewing" tea are functionally the same from the perspective of a reasonable
14 consumer.  Would the end product be any different despite the difference in verbiage?
15 Not in the slightest.  Would "making" tea require the reasonable tea drinker to grow
16 and source the required ingredients before enjoying their cup?  No, because that tea
17 leaf cultivation process was completed well before the tea drinker contemplated
18 "making" or "brewing" said tea.  Moreover, Plaintiff conveniently omits Collins
19 Dictionary's own definition of "brewed": to "prepare (a drink, such as tea) by boiling
20 or infusing."  *Brewed*, Collins Dictionary Online,
21 https://www.collinsdictionary.com/us/dictionary/english/brewed (last visited Sep. 3,
22 2025).  Considering these commonplace definitions, it is implausible that 'a
23 significant portion of the general consuming public or of targeted consumers, acting
24 reasonably in the circumstances, could be misled" into believing Defendants'
25 "Brewed in USA" claim meant its ingredients were grown and/or sourced
26 domestically.  *See Lavie*, 129 Cal.Rptr.2d at 495.

Accordingly, the Court **GRANTS** Defendants' Motion as to the First, Second, and Third causes of action with leave to amend, although it is not clear that any amendment could cure these deficiencies.

> *ii.* *California "Made in the USA" Statutory Safe Harbors*[3]

"Reasonable consumer" issues aside, Defendants also contend that even if the Court interpreted the "Brewed in USA" claim as equivalent to a "Made in the U.S.A.' claim, the safe harbor provisions of Section 17533.7 of the California Business and Professions Code bar Plaintiff's claims. (Mot. at 9). Under these provisions, if a product with a "Made in the U.S.A." or label with "similar words" has one or more ingredients from outside the United States, statutory liability does not attach if the product's non-U.S. ingredients "constitute not more than 5 percent of the final wholesale value of the product," or (2) the manufacturer can show that the foreign content of the product "constitute[s] not more than 10 percent of the [product's] final wholesale value" and such materials are not domestically available. Cal. Bus. & Prof. Code § 17533.7(b)-(c). Courts, including this one, have applied the safe harbor doctrine to claims under the UCL, FAL, and CLRA. *See Wirth v. Mars Inc.*, No. CV 15-1470-DOC (KESx), 2016 WL 471234, at *6 (C.D. Cal. Feb. 5, 2016); *Cruz v. Anheuser-Busch, LLC*, No. CV 14-09670 AB (ASx), 2015 WL 3561536, at *3 (C.D. Cal. June 3, 2015).

Although they dispute whether safe harbor is triggered, Plaintiff maintains that their Complaint alleges sufficient facts to demonstrate that the Class Products fall outside of these statutory carveouts. (*See* Opp'n at 14). In the Complaint, Plaintiff

---

[3] The parties spend considerable briefing on preemption issues associated with California's "Made in the USA" statutory safe harbors and the FTC's regulations governing U.S. origin claims on products. As a foray into such thorny issues are not required for the ultimate disposition of this Motion, the Court declines to engage with these arguments. However, the Court recognizes the growing number of district courts within the Circuit finding against preemption of California's statutory scheme. *See, e.g., McCoy v. McCormick & Co., Inc.*, No. 1:25-CV-00231 JLT SAB, 2025 WL 2315457 (E.D. Cal. Aug. 12, 2025); *Corona v. It's a New 10, LLC*, No. 25CV377-GPC(BLM), 2025 WL 2173961 (S.D. Cal. July 31, 2025).

8

pleads general references to the Class Products being "substantially" and "materially composed of indispensable foreign ingredients," relying in large part on Pure Leaf's website statement that the tea utilized in the brewing process is sourced from either India, Kenya, Indonesia or Sri Lanka. (Compl. ¶¶ 6, 57–58). Defendants argue these generalized allegations are insufficient to fulfill Rule 9(b)'s heightened pleading requirement as it relates to the safe harbor provisions. (Mot. at 8–9).

Because Plaintiff's Complaint is predicated in large part on Defendants' alleged violation of state and federal "Made in the USA" regulations (*see* Compl. ¶¶ 27, 136, 142), Section 17533.7's safe harbor provisions are quite consequential to the future of this suit. "If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination." *Ebner*, 838 F.3d at 963; *see also Baum v. J-B Weld Co.*, LLC, No. 19-CV-01718-EMC, 2020 WL 4923624, at *3 (N.D. Cal. Aug. 21, 2020) ("[T]he California legislature did not intend a claim of false 'Made in USA' representations to lie where the 5% safe harbor is not exceeded."). Thus, to the extent Plaintiff's claims rely on allegations that Defendants' labeling is violative of Section 17533.7, those causes of action are foreclosed unless Plaintiff sets forth sufficient facts for this Court to "draw the reasonable inference that [Defendants are] liable for the [unlawful "Made in the USA" labeling] alleged." *Iqbal*, 556 U.S. at 678. Moreover, under Rule 9(b), Plaintiff "must set forth what is false or misleading about a statement, and why it is false." *Davidson*, 889 F.3d at 964. In more concrete terms, Plaintiff must make more than conclusory allegations in showing that Defendants' conduct falls outside of the safe harbor provisions of Section 17533.7. Here, Plaintiff has failed to meet that burden by failing to plausibly allege that either (1) the foreign-sourced ingredients found in the Class Products were *more* than 5 percent of the final wholesale value of the relevant product, or (2) the foreign content of the product was *more* than 10 percent of the final wholesale value *and* those ingredients were domestically available. *See Flodin v. Cent. Garden & Pet Co.*, No. 21-CV-01631-JST, 2023 WL 3607278, at

9

*2 (N.D. Cal. Mar. 9, 2023) (holding plaintiff to a similar pleading requirement). The Court does not expect Plaintiff to have proven this with mathematical precision; rather, Plaintiff needed only to set forth some set of facts, other than the Class Products being "substantially" and "materially composed of indispensable foreign ingredients" (*See* Compl. ¶¶ 6, 57–58), to show they stray afoul of the 5% safe harbor limit of Section 17533.7. As the Complaint stands currently, Plaintiff has fallen short of demonstrating actionable claims under the UCL, CLRA, and FAL. *See, e.g.*, *Alvarez v. Chevron Corp.*, 656 F.3d 925, 934 (9th Cir. 2011) (affirming the district court's dismissal of plaintiffs' UCL and CLRA claims pursuant to California's safe harbor doctrine); *Fitzpatrick v. Tyson Foods, Inc.*, 714 Fed. App'x 797, 798 (9th Cir. 2018). Accordingly, the Court finds this to be an additional ground for dismissal of the California consumer protection claims.

### iii. Negligent and Intentional Misrepresentation Claims

Plaintiff also brings common law fraud claims of intentional and negligent misrepresentation. *See Biggs v. Bank of Am. Corp.*, No. EDCV1500267VAPKKX, 2017 WL 11648863, at *3 (C.D. Cal. July 28, 2017) (equating common law fraud with intentional and negligent misrepresentation); *Just Film, Inc. v. Merch. Servs., Inc.*, No. C 10-1993 CW, 2011 WL 3809908, at *12 (N.D. Cal. Aug. 29, 2011) (same). To state a claim for intentional misrepresentation under California law, Plaintiff must establish: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990, 22 Cal.Rptr.3d 352, 102 P.3d 268 (Cal. 2004). Negligent misrepresentation differs in that it "does not require scienter or intent to defraud." *See Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173–74, 132 Cal.Rptr.2d 490, 65 P.3d 1255 (Cal. 2003) (quotation omitted). Instead, Plaintiff must establish that Defendant made the misrepresentation without "reasonable ground for believing it to be true." *Id.* at 174 (quoting Cal. Civ. Code §§ 1710(2), 1572(2)).

Claims under consumer protection statute and common law fraud claims are "substantively distinct" in that, for a statutory claim, "a plaintiff need merely allege that members of the public are likely to be deceived," while "a common law fraud deception must be actually false." *In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2009 WL 3740648, at *7 (N.D. Cal. Nov. 6, 2009) (quoting *In re Tobacco II Cases*, 46 Cal.4th 298, 312, 93 Cal.Rptr.3d 559, 207 P.3d 20 (2009)). Thus, a "perfectly true statement couched in such a manner that is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information" may be actionable under consumer protection statutes but not common law fraud. *Day v. AT & T Corp.*, 63 Cal. App. 4th 325, 333–34, 74 Cal.Rptr.2d 55 (1998).

The Court finds that Defendants' "Brewed in USA" label does not contain a false affirmation of fact necessary to state a claim for intentional or negligent misrepresentation. The dictionary definitions of "brewed" as discussed, *supra* section II.A.i, the Court therefore **GRANTS** Defendant's Motion as to Sixth and Seventh causes of action with leave to amend, although it is not clear that any amendment could cure these deficiencies.

     *iv.*  *Breach of Express Warranty Claim*

The Court similarly concludes that Plaintiff's breach of express warranty claim, predicated on the allegedly misleading nature of the "Brewed in USA" label, fails as a matter of law. To state a claim for breach of express warranty under California law, a plaintiff must show that: "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Franco v. Ford Motor Co.*, 644 F. Supp. 3d 672, 683 (C.D. Cal. 2022). Plaintiff's breach of express warranty claim wholly depends on Plaintiff's implausible allegation that Defendants warranted the Class Products as sourced and/or manufactured domestically. As stated previously, these claims hinge on a definition of "brewed" that strains credulity enough to prevent a warranty from lying. First, "Brewed in USA" is a true statement, so even if

1   Defendants warranted the Class Products accordingly, such a warranty is not
2   breached.  Second, because Plaintiff has failed to "point to the terms of the warranty,
3   [he] fails to state a claim for breach of express warranty." *Weiss v. Trader Joe's Co.*,
4   No. 818CV01130JLSGJS, 2018 WL 6340758, at *8 (C.D. Cal. Nov. 20, 2018) (citing
5   *Chuang v. Dr. Pepper Snapple Grp., Inc.*, No. 17-CV-01875, 2017 WL 4286577, at
6   *7 (C.D. Cal. Sept. 20, 2017)).  The Court therefore **GRANTS** Defendants' Motion as
7   to the Fourth cause of action with leave to amend, although it is not clear that any
8   amendment could cure these deficiencies.

                v.      *Unjust Enrichment Claim*

10   In the alternative to the alleged contract-based claims, Plaintiff pleads an unjust
11   enrichment cause of action.  Although California does not enumerate a standalone
12   cause of action for unjust enrichment, courts often construe such a cause of action as a
13   quasi-contract claim seeking restitution.  *See Astiana v. Hain Celestial Grp., Inc.*, 783
14   F.3d 753, 762 (9th Cir. 2015).  However, that claim meets the same fate as the
15   previous six.  By failing to state claims under the California consumer protection
16   statutes, Plaintiff cannot "allege sufficient facts to support any claims based on the
17   depiction of ["Brewed in USA"] on Defendant's product labels." *See McKinniss v.*
18   *Sunny Delight Beverages Co.*, No. CV 07–02034–RGK (JCx), 2007 WL 4766525, at
19   *6 (C.D. Cal. Sept. 4, 2007).  Moreover, Plaintiff's claim is predicated on the same
20   alleged misconduct—that "Defendants represented [the Class Products] as made in the
21   United States, without any qualification regarding the foreign ingredients contained
22   therein." (Compl. ¶ 189).  Because the Court finds that "Brewed in USA" is a truthful
23   representation, Defendants were not unjustly conferred a benefit to the detriment of
24   Plaintiff.  Accordingly, the Court **GRANTS** Defendants' Motion as to the Fifth Cause
25   of Action with leave to amend, although it is not clear that any amendment could cure
26   these deficiencies.

### III.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED** in its entirety. Defendant's Request for Judicial Notice is **DENIED** as moot as the exhibits sought to be noticed were not relied upon by the Court in this Order.

Plaintiff shall file an amended complaint consistent with this Order within 21 days of its issuance, as well as a redline of the amended complaint against the most recent version of the complaint.

**IT IS SO ORDERED.**

Dated: 9/3/2025

_____

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE